**UNITED STATES of America, Plaintiff-Appellant,**

v.

**$23,407.69 IN U.S. CURRENCY, Defendant-Appellee.**

**No. 81–1231.**

United States Court of Appeals, Fifth Circuit.

Sept. 19, 1983.

Rehearing and Rehearing En Banc Denied Nov. 14, 1983.

Archie Carl Pierce, Asst. U.S. Atty., Austin, Tex., for plaintiff-appellant.

Cohen & Cangelosi, Gary J. Cohen, Austin, Tex., for defendant-appellee.

Before DYER [*], JOHNSON and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

In this case the government, appellant, undertakes to accomplish the forfeiture of the sum of $23,407.69 in United States currency seized in connection with a lawful drug-related arrest. The appellee opposes the forfeiture on the ground the thirteen month delay from the time of the seizure until the complaint for forfeiture was filed by the government deprived him of his constitutional and statutory rights to a prompt resolution of the forfeiture issue. The district court agreed with the appellee's assertion that the delay was inordinate and unjustified. The court denied the government's forfeiture petition. We affirm.

On January 3, 1979, James R. Bishop was arrested in Austin, Texas, by local police officers pursuant to an outstanding federal arrest warrant for conspiracy to import marihuana. The ownership of the vehicle he was driving was listed in the name of someone whose address was in Houston and who was not in the car. The other two persons who were in the car with Bishop at the time of the arrest disavowed any interest in the automobile or its contents. Under standard police procedures the vehicle was then impounded.

After impoundment, the inventory search of the car turned up two fourteen pound bales of marihuana, a map of Mexico, a list of the license plate numbers of drug enforcement officers in Austin, and $23,407.69 in United States currency. The currency was promptly seized by the United States Government under 21 U.S.C. § 881(a)(6) as "moneys" used or intended to be used in drug-related transactions.

In spite of informal inquiries from time to time by Bishop concerning the sum of money, it was not until six months later, on July 6, 1979, that the United States Government filed an administrative notice of its intention to seek forfeiture of the $23,-407.69. At some time after the filing of this notice, Bishop filed a petition in remission of forfeiture, but it was not until over a year after the original seizure of the funds, on February 21, 1980, that the United States Attorney's Office filed its verified complaint for forfeiture in the United States District Court. Approximately three weeks later, Bishop was notified that his petition in remission was denied.

The district court denied forfeiture of the sum of money on the ground that the delay

[*] Circuit Judge of the Eleventh Circuit, sitting by designation.

of thirteen months before the filing of the forfeiture complaint violated the statutory requirement that the government act without delay and also constitutional requirements involving a deprivation of property without due process of law under the Fifth Amendment.

While 21 U.S.C. § 881(a)(6) authorizes the forfeiture of "moneys" traceable to drug dealing, the procedures required are established by specific reference in the statute as those provided for in the seizing, forfeiture and condemnation of property for violations of the customs laws. 21 U.S.C. § 881(d). Those customs laws are found in 19 U.S.C. §§ 1602–1615. Of particular importance in this case is the provision of 19 U.S.C. § 1603 which requires the ". . . officer to report promptly such seizure or violation to the United States Attorney for the district in which such . . . seizure was made", and the provision of § 1604: "It shall be the duty of every United States Attorney immediately to inquire into the facts of cases reported to him by customs officers and the laws applicable thereto, and if it appears probable that any fine, penalty, or forfeiture has been incurred by reason of such violation, for the recovery of which institution of proceedings in the United States District Court is necessary, forthwith to cause the proper proceedings to be commenced and prosecuted without delay, for the recovery of such fine, penalty, or forfeiture in such case. . . ."

The opposition to forfeiture in this case arises from the six months delay in giving notice of forfeiture and the total of thirteen months delay in bringing a forfeiture complaint in the federal district court.

After oral argument, we held this case in abeyance pending a Supreme Court decision in *United States v. $8,850 in U.S. Currency,* 645 F.2d 836 (9th Cir.1981), *cert. granted,* 455 U.S. 1015, 102 S.Ct. 1708, 72 L.Ed.2d 132 (1982), because of the close relationship of the facts of that case to the facts here involved. The United States Supreme Court has now rendered its decision. We have received additional briefing by the

parties in the light of that case, and we now decide this case.

The Supreme Court case which we must follow is *United States v. $8,850 in U.S. Currency,* —— U.S. ——, 103 S.Ct. 2005, 76 L.Ed.2d 143 (1983). In that case the United States customs officials seized $8,850 in currency from the claimant as she passed through customs at Los Angeles International Airport. As pointed out above, the statutes provided for the seizing of currency by customs officials are also applicable in the case *sub judice* by specific reference in 21 U.S.C. § 881(d).

The Supreme Court case involving the seizure of the $8,850 (hereafter referred to as the *$8,850 Case*) presented an eighteen month delay between the time of the seizure and the filing by the government of the civil proceedings for forfeiture of the currency. The Court, after a careful analysis, found justification for the eighteen month delay and upheld the right of the government to forfeiture. The Court held that the four-factor balancing test of *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), is to be used for determining whether a delay in filing a forfeiture action is reasonable. While *Barker* dealt with the Sixth Amendment right to a speedy trial, the Court nevertheless recognized that the issue involving the length of time that a citizen is deprived of some property by the government is best analyzed under the *Barker* balancing inquiry. The four factors are: "length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." 103 S.Ct. at 2012.

The Court in the *$8,850 Case* stated that the "overarching factor" was the length of the delay. The Court found that the delay of eighteen months was "quite significant". The Court then turned its attention to the government's justification for the delay. The government took the extreme position that a pending administrative petition for return of the money completely tolled the requirement of filing a judicial proceeding. The Court refused to accept such a black letter principle. But the matter of greatest

importance in the analysis of the Court was its stress upon the fact that the government had undertaken an active investigation shortly after the seizure of the money. The Court said: "During the initial seven months after the seizure the Customs Service was determining whether to grant the petition (for mitigation or remission). This investigation required responses to inquiries to state, federal, and Canadian law enforcement officers. Such an investigation inherently is time-consuming, and there was no indication that it was not pursued with diligence." 103 S.Ct. at 2014.

The Supreme Court stressed that the claimant was notified eight days after the seizure that the government believed the money was subject to forfeiture. This led to a petition for remission a few days later. Further, the Customs Service had referred the matter to the United States Attorney within two months. Also an indictment quickly obtained by the government had provided for forfeiture of the money. Thus, if the government had prevailed on that particular indictment, a civil forfeiture would have been rendered unnecessary. When the criminal trial ended, the Secretary of the Treasury made a final decision within three months to deny the petition for remission. The United States Attorney then promptly filed the civil forfeiture proceeding. "In sum," said the Court, "the Government's diligent pursuit of pending administrative and criminal proceedings indicate strongly that the reasons for its delay in filing a civil forfeiture proceeding were substantial." 103 S.Ct. at 2014. Thus, while the Court found the first factor the length of the delay significant, the Court also found solid grounds for the delay in the government's investigations and criminal trial throughout the delay.

The third *Barker* factor is the claimant's assertion of the right to a judicial hearing. In the *$8,850 Case* the claimant did not file a motion under Fed.R.Crim.P. 41(e) for a return of the seized property which would have entitled her to a hearing. The Court treated the third factor of no significance under the particular facts of the case.

The Court defined the final factor involving prejudice to the claimant as an inquiry into "whether the delay has hampered the claimant in presenting a defense on the merits, through, for example, the loss of witnesses or other important evidence." 103 S.Ct. at 2014. No claim of such prejudice was made in the case.

■ Applying the analysis of the Supreme Court to the facts involving appellee Bishop, we are compelled to come to the conclusion that the government may not prevail in its forfeiture claim. The length of time was thirteen months, substantially less than in the *$8,850 Case*. But of critical importance in this case, and relied upon heavily by the district court, is the fact that for the first six months period nothing was done by the government. There is no proof that the officers reported the forfeiture to the United States District Attorney. Certainly there is no proof that, as the statute requires, the United States Attorney "cause[d] the proper proceedings to be commenced and prosecuted, without delay." It was six months after the seizure that the government first notified Bishop that in its opinion the currency was subject to seizure.

In stark contrast, in the *$8,850 Case* the person from whom the currency was seized was notified officially by the government eight days after the seizure of the funds that the seized currency was subject to forfeiture and that she had a right to petition for remission or mitigation. After receiving that notice, the person involved filed her petition for remission or mitigation a week later. It was this immediate reaction by the government, taking the first steps to establish the forfeiture, upon which the Supreme Court most heavily relied in finding that there had not been unreasonable delay in the forfeiture of the $8,850.

The Court then went on to point out that once the notification had been made, the administrative proceedings had begun, a criminal prosecution took place, and other actions were being taken by both sides throughout the entire period of the delay. In the case before us, the government delayed six months with no explanation of

any kind and no excuse before it notified Bishop that it was undertaking to establish a forfeiture of the cash involved. It is clear to us that this unexplained delay violates the guidelines of *Barker v. Wingo,* as made applicable to a forfeiture case by the *$8,850 Case.* While the Supreme Court's decision was based entirely upon due process and the Fifth Amendment, and we base our decision on the constitutional requirement, our conclusion is also based upon the applicable provisions of 19 U.S.C. §§ 1603, 1604. The government did not carry out its obligations under those provisions in moving "without delay" to accomplish the forfeiture.

We follow prior authority, as well, in holding that the government must explain and justify substantial delays in seeking forfeiture of seized property. *See Castleberry v. Alcohol, Tobacco & Firearms Div., Treasury Dept.,* 530 F.2d 672, 674 (5th Cir. 1976); *United States v. One 1972 Wood, 19 Foot Custom Boat, FL 8443 AY,* 501 F.2d 1327, 1329 (5th Cir.1974). *See e.g.,* also in other U.S. Courts of Appeals, *Ivers v. United States,* 581 F.2d 1362, 1368 (9th Cir. 1978); *United States v. One Motor Yacht Named Mercury,* 527 F.2d 1112, 1114 (1st Cir.1975); *States Marine Lines, Inc. v. Schultz,* 498 F.2d 1146, 1153 (4th Cir.1974); *United States v. One Package of Antiques & Indian Jewelry,* 472 F.2d 468, 470 (10th Cir.1972).

One final matter remains. The government takes the position that the fourth requirement of *Barker,* a showing of prejudice, has not been made and cannot be made in any case in which the government is holding cash since compensation can always be made with interest for an improper withholding of money. As pointed out above, the Supreme Court did not define the fourth requirement in these terms. But the Supreme Court did answer this question also. The Court recognized that the fact that money is involved does not eliminate the concern of the person making the claim. As the Court said, "Being deprived of this substantial sum of money for a year and a half is undoubtedly a significant burden." 103 S.Ct. at 2012.

In summary, we conclude that the time of delay is important. If it is extended, the government must explain and justify. Lacking such explanation or justification in this case the district court's dismissal of the government's claim must be affirmed.

AFFIRMED.