United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 22, 2005**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

———————————————

No. 04-20222

———————————————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ANTHONY ROBINSON,
also known as Tony Marcel Robinson,

Defendant - Appellant.

———————————————————————————

Appeal from the United States District Court
for the Southern District of Texas

———————————————————————————

Before HIGGINBOTHAM, WIENER, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Anthony Robinson, a federal prisoner, appeals from the district court's denial of his motion

for return of property, in which Robinson sought to recover cash that was administratively forfeited

by the Federal Bureau of Investigation. For the reasons that follow, we affirm.

### I. FACTS AND PROCEEDINGS

This case concerns whether the FBI, after seizing cash from Anthony Robinson during a

narcotics investigation, satisfied the notice requirements of due process before declaring the cash to

be administratively forfeited. The underlying facts of the seizure and forfeiture are not in dispute.

On November 1, 1998, Houston police effected a traffic stop of Robinson at the request of the FBI,

who were investigating Robinson as part of a multi-party drug investigation. Inside Robinson's car, officers discovered large sums of cash in a Crown Royal bag under the driver's seat, in the glove compartment, and in a small black suitcase. FBI agents seized the money but released Robinson. Robinson provided the agents with a home address of 18062 Forest Cedar, Houston, Texas, which was also on his driver's license, and a business address of 12719C Bissonnet.

The FBI subsequently initiated administrative forfeiture proceedings for $188,980.[1] Almost eight months after the seizure, the FBI sent a certified letter postmarked June 22, 1999 to Robinson's home address, informing him of the seizure and the intent to forfeit. The letter provided information about a claimant's right to contest the seizure by filing a claim of ownership and the right to file a petition for remission or mitigation of the forfeiture. The letter was returned on December 1, 1999, marked "UNCLAIMED."

The FBI then searched its ChoicePoint database and discovered four additional addresses associated with Robinson's name and Social Security Number. Within one week of the return of the unclaimed letter, four similar certified letters notifying Robinson of the seizure and forfeiture were sent to the alternate addresses. One of the letters was sent to Robinson's business address at 12719C Bissonett and one letter was sent to 18062 Forest Cedar*s*, which is a variation of the home address on Robinson's driver's license. Another letter was sent to 7810 Pouter. Each letter was returned marked "UNCLAIMED," "ATTEMPTED, NOT KNOWN," or "MOVED, LEFT NO ADDRESS."

A few months later, the FBI searched its ChoicePoint database once again and discovered two more addresses linked to Robinson. The FBI mailed to these addresses certified letters postmarked

---

[1] Robinson claimed in the district court that the FBI had actually seized $189,700, but the difference in amount does not affect the disposition of the case.

March 27, 2000. One of the letters was addressed "12719 Bissonnet St., Apt. C," which is a variation on the business address that Robinson had given the FBI. The letters were returned marked "UNCLAIMED" and "MOVED, LEFT NO ADDRESS."

The FBI also published public notice of the seizure and forfeiture for three successive weeks on three different occasions in the *New York Times*. The notice appeared on July 4, 1999, July 11, 1999, July 18, 1999, December 19, 1999, December 26, 1999, January 2, 2000, April 9, 2000, April 16, 2000, and April 23, 2000. When no one filed a claim of ownership or a petition for remission or mitigation, the FBI declared the cash to be administratively forfeited on June 15, 2000.

Meanwhile, Robinson was initially indicted along with two codefendants on May 8, 2000 for drug offenses. Robinson was charged in a six-count superseding indictment on September 27, 2000 with drug trafficking and money laundering. A jury found Robinson guilty on four counts, and the district court sentenced him to concurrent terms of 235 months in prison. This Court affirmed the conviction on direct appeal. *United States v. Ingram*, No. 01-21041 (5th Cir. Apr. 21, 2004).

On June 25, 2003, Robinson filed a *pro se* motion in district court for return of property under FED. R. CRIM. P. 41(e)[2] and 19 U.S.C. §§ 1601–15. Robinson argued that the money was seized during an illegal search and seizure, that he was not given notice of the forfeiture as required by 19 U.S.C. § 1607, that the delay prior to the government's initial notice deprived him of due process, and that the criminal judgment did not order any property forfeited.

The government filed a response, asserting that it should be granted summary judgment because its attempts to notify Robinson about the forfeiture satisfied due process. The government attached to its motion an affidavit from an FBI paralegal specialist in the Forfeiture and Seized

_____

[2] The former provisions of Rule 41(e) are now found in Rule 41(g).

3

Property Unit and copies of the certified letters and newspaper publications discussed above.

Robinson filed a reply in which he argued that the government's first notice was sent almost eight months after the seizure, constituting an unreasonable delay in violation of due process. He also asserted that he had lived at the home address on Forest Cedar for four months after the seizure before moving to 7810 Pouter. He argued that he had spoken to an FBI agent, who advised him that he had to get an attorney and file a claim for the money. His attorney allegedly then called the FBI, learned the amount of money involved, and was told that a notice would be sent to Robinson. Robinson further argued that the FBI did not send a notice to his business address until thirteen months after the seizure, that delivery was unreasonably attempted on Christmas Day, and that the notice published in the *New York Times* was unreasonable because he lives in Houston.

The district court treated Robinson's motion as a civil complaint for equitable relief because no criminal charges were pending, and it granted summary judgment to the government. The court held that the government's efforts to contact Robinson about the forfeiture, evidenced by the seven certified letters that were returned unclaimed, and its publishing of notice in the *New York Times*, which it found was a newspaper of general distribution within the district, were reasonably calculated to give Robinson notice and satisfied due process. The court noted that letters had been sent to three addresses at which Robinson acknowledged he had lived and done business, *i.e.*, the addresses on Forest Cedar, Bissonnet, and Pouter.

With respect to the delay between the seizure on November 1, 1998 and the government's first letter in June 1999, the court first noted that Robinson supported his argument that the delay was unreasonable by relying on cases involving delays by the government in initiating civil or criminal forfeiture proceedings. Because the forfeiture proceeding in this case was administrative, not judicial,

4

the court opined that it was unclear whether the cases cited by Robinson were applicable.

The court then noted that the cases cited by Robinson used a four-part balancing test for determining an unreasonable delay, analyzing 1) the length of the delay, 2) the reason for the delay, 3) the claimant's assertion of his rights, and 4) prejudice to the claimant. *See United States v. Eight Thousand Eight Hundred and Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S. 555, 564 (1983) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). The district court held that, even assuming the applicability of this test, the delay in this case was not unreasonable.

The court held that the eight-month delay was reasonable because Robinson had not sought the return of his funds or otherwise contested the forfeiture during the criminal proceeding. Robinson also failed to show that the delay caused him any prejudice. In addition, the delay was justified because the seizure was made during the course of a lengthy criminal investigation and the Supreme Court has indicated that pending criminal proceedings may present justification for a delay in instituting civil forfeiture proceedings. *See $8,850*, 461 U.S. at 567. The court concluded that there was no showing that the government was lax in its investigation or that the subsequent criminal charges against Robinson were not pursued with reasonable diligence. Robinson filed a timely notice of appeal.

## II. STANDARD OF REVIEW

Although Robinson filed his motion for return of property pursuant to Rule 41(g), the district court properly construed it as a civil complaint and the denial of the motion as a grant of summary judgment. *See Clymore v. United States*, 217 F.3d 370, 373 (5th Cir. 2000); *United States v. Robinson*, 78 F.3d 172, 174 (5th Cir. 1996). This court reviews the grant of summary judgment *de novo*. *Robinson*, 78 F.3d at 174. Summary judgment is proper "if the pleadings, depositions,

5

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

## III. DISCUSSION

Robinson raises four arguments on appeal. He argues that 1) the delay of over seven months between the seizure of the cash and the government's first notice of forfeiture was unjustified and violated due process; 2) the government's written notice included only one letter to his residence and one letter to his business address without any attempt to resend the notice to those addresses; 3) the publication of notice in the *New York Times*, rather than the *Houston Chronicle*, was not reasonably calculated to provide him notice of the forfeiture; and 4) because the government indicted him more than one month before the cash was administratively forfeited, it knew he would be in custody and easily notified of the forfeiture, but it did not take steps to do so.

A. Forfeiture background

Proceeds of drug trafficking are subject to civil forfeiture under federal law. *Kadonsky v. United States*, 216 F.3d 499, 502 (5th Cir. 2000); 21 U.S.C. § 881(a)(6). When the government seizes property valued at less than $500,000 or any monetary instrument, it may use administrative forfeiture procedures, but must provide notice before forfeiting the property or money. *Robinson*, 78 F.3d at 175; *see* 19 U.S.C. § 1607(a). To satisfy this notice requirement, the government must (1) publish notice of the administrative forfeiture and (2) send written notice to any party who appears to have an interest in the seized article. *Kadonsky*, 216 F.3d at 503; § 1607(a).

A party receiving notice has twenty days to file a claim for the property or a petition for remission or mitigation. *Kadonsky*, 216 F.3d at 503; § 1608. If a claimant files a claim, the

6

administrative forfeiture proceedings cease and the matter is referred to the United States Attorney for initiation of judicial forfeiture proceedings. *Kadonsky*, 216 F.3d at 503; 21 C.F.R. § 1316.76. If no claim is filed, the property is summarily forfeited to the government. *Barrera-Montenegro v. United States*, 74 F.3d 657, 660 (5th Cir. 1996); § 1609.

Once an administrative forfeiture is complete, a district court may review only "whether the forfeiture comported with constitutional due process guarantees." *Kadonsky*, 216 F.3d at 506. If a party "with an interest in forfeited funds failed to receive constitutionally adequate notice, the administrative forfeiture is void and must be vacated." *Id*. at 503; *see Barrera-Montenegro*, 74 F.3d at 660–61. Due process requires that the notice be "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the [forfeiture] action and afford them an opportunity to present their objections.'" *Barrera-Montenegro*, 74 F.3d at 660 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

B.  Delay in notice

Robinson argues that his due process rights were violated because the government waited over seven months before attempting to notify him about the forfeiture. He relies primarily on *$8,850*, 461 U.S. 555, and *United States v. $23,407.69 in U.S. Currency*, 715 F.2d 162 (5th Cir. 1983).

In *$8,850*, the Supreme Court addressed whether an eighteen-month delay in the government's filing a civil forfeiture proceeding violated due process, and held that the proper analysis of the delay required consideration of the four *Barker* factors: 1) length of the delay, 2) the reason for the delay, 3) the defendant's assertion of her rights, and 4) prejudice to the defendant. 407 U.S. at 564. The Court held that the eighteen-month delay was "quite significant." *Id.* at 565.

7

However, with respect to the reason for the delay, the Court noted that the government was initially involved in a time-consuming investigation of whether to grant the petition for remission and that the pending criminal proceeding further complicated the process. *Id.* at 567–68. The Court held that "[p]ending criminal proceedings present . . . justifications for delay in instituting civil forfeiture proceedings." *Id.* at 567. Because the government diligently pursued the pending administrative and criminal proceedings, the Court held that the government had legitimate reasons for the delay. *Id.* at 568.

In *$23,407.69*, this Court applied the Supreme Court's holding in *$8,850* to a case similar, but not identical, to the instant case. There, cash was seized from the defendant during a lawful drug-related arrest, and six months later the government filed an administrative notice of its intent to seek forfeiture. *$23,407.69*, 715 F.2d at 163. The defendant filed a petition for remission, but the government did not file a civil forfeiture complaint until seven months later and thirteen months after the initial seizure. *Id.* The district court denied the government's forfeiture petition because the thirteen-month delay was inordinate and denied the defendant his right to prompt resolution of the issue. *Id.*

This Court noted that the opposition to the forfeiture arose from "the six months delay in giving notice of forfeiture and the total of thirteen months delay in bringing a forfeiture complaint." *Id.* at 164. This Court held that the thirteen-month delay was substantially less than the eighteen months in *$8,850*, but "of critical importance" was the fact that "for the first six months period nothing was done by the government." *Id.* at 165. This Court distinguished *$8,850*, where the claimant was officially notified eight days after the seizure and the notification was followed by administrative proceedings and a criminal prosecution during the delay. *Id.* In contrast, this Court

8

noted that the government delayed for six months with no explanation and no excuse before notifying the defendant about the forfeiture. *Id.* at 165–66. This Court also held that the deprivation of a substantial sum of money for more than one year was "'undoubtedly a significant burden.'" *Id.* at 166 (quoting *$8,850*, 461 U.S. at 565). This Court concluded that "the government must explain and justify" any extended delay and that, absent such explanation, the dismissal of the government's claim must be affirmed. *Id.*

Robinson contends that there is "no appreciable difference" between his case and *$23,407.69*. He notes that the nearly eight-month delay in his case is two months greater than the six-month period in *$23,407.69*. The government argues that *$23,407.69* and *$8,850* are inapposite because those cases involved judicial forfeitures, whereas this case concerned an administrative forfeiture. This position is without merit.

This Court in *$23,407.69* confronted the government's six-month delay in giving administrative notice of an intended forfeiture, and the decision was grounded in due process. 715 F.2d at 166 ("[W]e base our decision on the constitutional requirement [of due process]."). *$23,407.69*, which relied on *$8,850*, is applicable to this case. Moreover, this Court has also applied the four-factor *Barker* balancing test in an unpublished but precedential case analyzing a claimed due process violation because of a delay in the initial publication and mail notice following a seizure of cash during a drug investigation. *See United States v. $17,420.00 in United States Currency*, No. 94-10711, slip op. at 3 (5th Cir. May 2, 1995); 5th Cir. R. 47.5.3 (unpublished opinions issued before January 1, 1996 are precedential). Thus, contrary to the government's assertion, the balancing test is applicable to Robinson's claim.

The government further argues that this district court, and consequently this Court, lack

jurisdiction to collaterally review unreasonable delay issues. The government is correct to the extent that district court review of a final administrative forfeiture is limited. District courts lack jurisdiction to review the merits of such a forfeiture unless the agency failed to follow statutory and constitutional due process standards. *See United States v. Schinnell*, 80 F.3d 1064, 1069 (5th Cir. 1996) ("Once the administrative forfeiture was completed, the district court lacked jurisdiction to review the forfeiture except for failure to comply with procedural requirements or to comport with due process."). Due process standards, however, encompass the timeliness of the forfeiture notice. *See, e.g., Robinson v. United States*, 734 F.2d 735, 738 (11th Cir. 1984) ("An unreasonably long retention without instituting a forfeiture proceeding can constitute a denial of due process.") (citing *$8,850*, 461 U.S. 555; *$23,407.69*, 715 F.2d 162).

Whether the delay in the government's first notice to Robinson was unjustified presents a close question in light of this court's decision in *$23,407.69*. There, this Court was critical of the government for failing to offer an explanation for the six-month delay from the seizure to the first notice. *$23,407.69*, 715 F.2d at 165. Here, the government waited nearly eight months from the November 1, 1998 seizure before it attempted to send its first notice to Robinson. In light of the circumstances as a whole as discussed below, however, we affirm the district court's grant of summary judgment upholding the forfeiture.

(1) Length of delay

First, "there is no obvious bright line dictating when a post-seizure hearing must occur." *$8,850*, 461 U.S. at 562. Similarly, there is no obvious bright line as to when the government must first notify a party of its intent to forfeit seized funds. The first factor of the analysis, the length of the delay, does not automatically require a conclusion that due process was violated. Rather, we

10

consider the length of the delay in relation to the other factors, and "the government must explain and justify substantial delays in seeking forfeiture of seized property." *$23,407.69*, 715 F.2d at 166.

(2) Reason for delay

In *$23,407.69*, this Court was most troubled by the six-month period during which the government apparently did nothing. However, in *$17,420.00*, No. 94-10711 at 3, this Court held that a six-month delay from seizure until first mail notice was reasonable under the circumstances. In that case, a drug trafficking investigation in Florida led police to the defendant in Dallas, where crack and cash were seized during the execution of a search warrant. *Id.* at 2. The FBI administratively forfeited the currency, but after it learned the defendant had not received notice, it rescinded the administrative forfeiture and began judicial proceedings. *Id.* With respect to the original notice, this Court held that the initial delay of 109 days from the seizure until the first publication and six months from the seizure until mail notice was not unreasonable in light of the pendency of the criminal prosecution and the need to coordinate operations between the Dallas and Tampa FBI offices. *Id.* at 3.

Here, the record shows that the seizure similarly occurred during a large-scale investigation of a drug trafficking operation that transported marijuana in ton-quantities from Houston, Texas to Philadelphia, Pennsylvania; Edison, New Jersey; and New York beginning in the first six months of 1998 until the date of the indictment in 2000. The indictment alleged specific instances of marijuana transportation in March, April, and May 1999. In Robinson's direct appeal, this Court noted that Robinson had been under surveillance since 1998. *United States v. Robinson*, No. 01-21041, slip op. at 2 (5th Cir. Apr. 21, 2004).

As in *$17,420.00*, the delay from the time of the initial seizure to the first notice does not

11

appear unreasonable in light of the simultaneous criminal investigation. *Cf. $8,850*, 461 U.S. at 567 ("Pending criminal proceedings present similar justifications for delay in instituting civil forfeiture proceedings.").

Robinson argues that a delay caused by criminal investigation is no justification here because the *$8,850* Court addressed a delay caused by an actual criminal *prosecution*, not a criminal *investigation*. However, the "Government must be allowed some time to decide whether to institute forfeiture proceedings." *$8,850*, 461 U.S. at 565. Therefore, at least some part of a delay may be excused by an investigation. *But see id.* (noting that because investigating officials normally can make determination quickly, an investigation alone normally will only rarely justify a lengthy delay). The Ninth Circuit, however, notes the difficulty in forcing the government to institute forfeiture proceedings while an investigation is ongoing. In *United States v. Forty-Seven Thousand Nine Hundred Eighty Dollars ($47,980) in Canadian Currency*, 804 F.2d 1085 (9th Cir. 1986), the Ninth Circuit held that a fourteen-month delay after seizure of property and before civil forfeiture proceedings did not violate the claimant's due process rights, as the government was investigating a crime during the delay. *Id.* at 1089. The court noted that "[a] thorough criminal investigation may be very time consuming," and explained that "[i]f the government were forced to initiate criminal proceedings without adequate investigation it might have made a premature decision to prosecute, at considerable cost to [claimants]." *Id.* The Ninth Circuit's reasoning, drawn largely from *$8,850*, is persuasive, as it noted that a civil forfeiture proceeding might estop later criminal proceedings and provide improper opportunities for a criminal defendant to discover details of a contemplated criminal proceeding. *Id.*

The Second Circuit also addressed this issue and held that criminal investigation of drug

trafficking is a compelling reason for delay in instituting forfeiture proceedings. In *Mercado v. U.S. Customs Serv.*, 873 F.2d 641 (2d Cir. 1989), the court upheld a seven and a half-month delay between seizure and initiation of forfeiture proceedings because the government needed time to (1) investigate and decide whether and how to proceed with forfeiture and (2) explore "[t]he possibility of a grand jury investigation and indictment." *Id.* at 646.

(3) Assertion of rights

The third balancing factor weighs in Robinson's favor because, unlike the defendant in *$8,850*, Robinson did attempt to assert his rights by filing a motion for return of his property. *See $8,850*, 461 U.S. at 569.

(4) Prejudice

Robinson has not explained how the government's delay caused him prejudice. Robinson correctly notes that in *$23,407.69*, 715 F.2d at 166, this Court recognized the Supreme Court's statement that deprivation of a substantial sum of money for more than one year is a significant burden. However, the Supreme Court made clear that the "primary inquiry [of the prejudice analysis] is whether the delay has hampered the claimant in presenting a defense on the merits." *$8,850*, 461 U.S. at 569. Robinson does not explain how the delay alone adversely affected his ability to present a defense, and the fourth balancing factor militates against him.

Due process requires a "flexible" approach, and the purpose of the four *Barker* factors is "to assess whether the basic due process requirement of fairness has been satisfied in a particular case." *$8,850*, 461 U.S. at 564–65. Here, in addition to the ongoing nature of the criminal investigation, Robinson had actual knowledge of the government's intent to forfeit the money long before the first attempt at mail notice. Robinson admitted in the district court that four months after the seizure he

13

spoke with an FBI agent about the procedure to get his money back, and he was told that he had to get a lawyer and file a claim. Robinson's attorney then contacted the FBI and learned the "exact amount of money involved." The FBI allegedly told Robinson's counsel that it would send a notice to Robinson. Therefore, Robinson was aware of the government's intent to forfeit the cash four months after the seizure, although the written notice was not sent until later. Yet, based on the time line admitted by Robinson, the government sent the first written notice only approximately three months after Robinson learned through his counsel of the government's intent. In light of all the circumstances outlined above, the nearly eight-month total delay from the seizure to the first written notice was not unjustifiably lengthy and comports with the fairness required of due process. The district court did not err in denying the motion for return of property on grounds of delay in notice.

C. Adequacy of the written notice

Robinson argues that the government's attempts at written notice were inadequate because of an inordinate delay between the various attempts and because the government never attempted to resend notice to his home or business addresses. He complains that when the first notice in June 1999 was unclaimed, the government waited almost six months to send further written notice in December 1999. He argues that the government then sent notice to different addresses, including his business address, and that delivery was unreasonably attempted on Christmas Day. He notes that the government's third attempt at written notice occurred three months after the second attempt and that the letters were again sent to different addresses without an attempt to re-deliver to his home or business addresses. These arguments are unavailing.

Due process does not require actual notice or actual receipt of notice. *See Dusenbery v. United States*, 534 U.S. 161, 170–71 (2002). Nor does it require the government to make "heroic

14

efforts" at notice. *Id.* at 170. The government's written notice must be merely "reasonably calculated, under all the circumstances" to provide notice to the claimant. *Mullane*, 339 U.S. at 314.

The government's first notice here was sent to Robinson's home address as listed on his driver's license. Notice sent to the address provided on a claimant's driver's license may be a reasonable means of notification when the government knows no other way of contacting the claimant. *McCray v. United States*, No. 94-30306, slip op. at 4 (5th Cir. Dec. 22, 1994); *compare Barrera-Montenegro*, 74 F.3d at 660–61 (notice sent to address on driver's license insufficient where the address was incorrect and DEA had been advised of correct address). Robinson concedes that this notice was adequate, except for the delay in the attempt discussed in the previous issue.

Robinson's complaint about the government's subsequent efforts at written notice are without merit. According to the record, the FBI learned that the first notice was unclaimed when it was returned on December 1, 1999. The FBI then searched its database for other addresses associated with Robinson and promptly sent four more letters on December 3, 1999. One of the letters was sent to Robinson's business address. Although Robinson complains that no attempt was made to resend notice to his home address, the record shows that a second letter was sent to the address on Forest Cedar, although the envelope was addressed as "Forest Cedars," with an "s." Further, a letter was also sent to the address on Pouter Drive, where Robinson admitted he had moved following his residence on Forest Cedar.

When the four letters were returned, the government sent two more letters to Robinson. One of the letters was resent to Robinson's business address on Bissonnet.

Robinson's complaint about attempted delivery of the government's notice on Christmas Day

15

is also unavailing.  Two of the envelopes are marked by the Post Office with a stamp showing "December 25."  The meaning of the stamp is not clear from the record.  However, even assuming that delivery was unreasonably attempted on that day, delivery was also attempted on two additional days.  Robinson has never explained why the letters went unclaimed.  The government should not be faulted for attempting to communicate with Robinson via the mail.  *See Mullane*, 399 U.S. at 319 (noting that the mails "are recognized as an efficient and inexpensive means of communication").  Under all the circumstances, the government's written notice was reasonably calculated to provide Robinson with notice, and there was no due process violation.  *See id.* at 314.

D.  Adequacy of publication notice

Robinson next argues that the government failed to comply with the statutory requirements for notice by publication because it published notice in the *New York Times*.  He asserts that there is no proof that the *Times* is a newspaper of general circulation in the judicial district.  He asserts that although the *Times* can be purchased in most major cities in the country, the *Houston Chronicle* is more readily available and the government did not faithfully discharge its duty to notify him by publishing notice in a newspaper whose "target audience resides in a northeastern state that is more than 1,500 miles away."

As noted above, the government is required to publish notice of a seizure and intent to forfeit "for at least three successive weeks in such manner as the Secretary of the Treasury may direct."  19 U.S.C. § 1607(a).  The regulations require that the notice be published "in a newspaper of general circulation in the judicial district in which the processing for forfeiture is brought."  21 C.F.R. § 1316.75(a).

The government here published notice for three successive weeks on three different occasions

16

in July 1999, December 1999, and April 2000. The district court held that the *New York Times* is a newspaper of general circulation in the Southern District of Texas, and the publication was satisfactory.

We affirm the district court's conclusion. *See New York Times Co. v. City of Lakewood*, No. 84-3675, 1986 WL 16819, at *1 (6th Cir. 1986) (noting that the *New York Times* is "a newspaper of general circulation, with readership throughout the United States"); *Stabler v. New York Times Co.*, 569 F. Supp. 1131, 1135 (S.D. Tex. 1983) (noting that, as of 1983, the *New York Times* maintained a permanent news bureau in Houston and sold more than one million copies of the newspaper in Texas every year). Although publication in the *Houston Chronicle* would have been more likely to provide him with notice, the government's choice did not violate the statutory publication requirements because it must publish only in a newspaper of general circulation. 21 C.F.R. § 1316.75(a); *see also Sarit v. U.S. Drug Enforcement Admin.*, 987 F.2d 10, 16 (1st Cir. 1993) (although the court was troubled by DEA's publication of forfeiture in *USA Today*, which the court did not consider a particularly effective notice vehicle in Providence, Rhode Island, there was no due process violation because regulations required only a publication of general circulation). The publication notice, therefore, did not violate due process.

E. Government's inaction

Finally, Robinson argues that because he was indicted on May 8, 2000, just over a month before the cash was forfeited on June 15, 2000, the government knew that he would soon be in custody and would have a lawyer with whom it could communicate and that there would be no ambiguity about how to notify him. Robinson asserts that instead of waiting to communicate with his attorney, the government forfeited the money. He argues that the government was not free to

17

disregard the fact that it would soon be able to provide him with actual notice of the forfeiture once he was in custody.

In *Barrera-Montenegro*, 74 F.3d at 660, this Court stated, "Although DEA is under no obligation to employ extraordinary means to notify an interested party to a forfeiture proceeding, when the government has in its possession information which would enable it to effect actual notice on an interested party, it is unacceptable for DEA to ignore that information and rely on notification by publication." *See also Armendariz-Mata v. U.S. Dep't of Justice*, 82 F.3d 679, 683 (5th Cir. 1996) (holding that service mailed to claimant's house and to jail was not reasonable because the government knew that the claimant was incarcerated and because notice to the jail was returned undelivered).

Robinson's reliance on these cases is not persuasive. The government began its attempts to notify Robinson long before his indictment. When it sent the first notice in June 1999, the government had no reason to believe that the notice could or would not be delivered to the address listed on Robinson's driver's license. *Compare Armendariz-Mata*, 82 F.3d at 683 (where the government knew that the claimant was incarcerated, it could not ignore this fact by mailing notice to his residence).

Because the government's attempts were unsuccessful, Robinson suggests that the government should have waited an additional length of time until he was in custody to serve him with actual notice. In *Armendariz-Mata*, 82 F.3d at 683, this Court faulted the government for failing to make additional attempts to notify the claimant when notice sent to the jail was returned and the government knew where he was located. Here, in contrast, the government did make additional attempts to notify Robinson after the first and second attempts at written notice were returned.

18

Further, Robinson was not taken into custody until June 21, 2000, after the cash had been forfeited. Unlike in *Armendariz-Mata*, the government did not ignore known information concerning Robinson's whereabouts. It is not apparent from the record that the government "acted [un]reasonably under all the circumstances in relying on the mail as a means to apprise" Robinson of the forfeiture. *Armendariz-Mata*, 82 F.3d at 683.

## IV. CONCLUSION

The judgment of the district court is AFFIRMED.