United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 29, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 06-60275

_____

TERRELL MARTA TAYLOR,

Plaintiff - Appellant,

versus

UNITED STATES OF AMERICA,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Mississippi

_____

Before REAVLEY, JOLLY, and BENAVIDES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

In this appeal, Terrell Taylor challenges the district court's determination that the Government satisfied the Due Process Clause in notifying him of the administrative forfeiture of $13,000, seized from Taylor upon his arrest for serious drug crimes. Because on this record the Government has failed to meet its burden to show that its notice was "reasonably calculated, under all the circumstances, to apprise" Taylor of the forfeiture, <u>Mullane v. Central Hanover Bank & Trust Co.</u>, 339 U.S. 306, 314 (1950), we reverse and remand for an evidentiary hearing.

Taylor was stopped for a traffic violation on March 22, 2001 in Biloxi, Mississippi. The patrol officer who stopped Taylor was a Drug Enforcement Administration ("DEA") task force agent. The arresting officer and other agents searched Taylor's car and discovered a large amount of cocaine base and $13,000 in cash. The agents seized these items and also took possession of a Rolex ring and a cell phone Taylor was carrying.

Following his arrest, Taylor was given a ride home by the agents and he consented to a search of his apartment at 2823 Bienville Boulevard, #47, in Ocean Springs, Mississippi. The agents discovered and seized two guns, a microwave oven and various other items believed to be related to narcotics distribution.

On April 24, DEA began administrative forfeiture proceedings for the $13,000 seized.[1] Using certified mail, DEA sent a forfeiture notice to 1228 King Henry Drive, also in Ocean Springs. DEA received a return receipt indicating the notice had been delivered on May 2.

DEA also sent a forfeiture notice to David Daniels, an attorney in Biloxi, and received confirmation that the notice had been delivered on April 30. Lourrie Stafford (presumably of

---

[1] The district court granted Taylor's motion to return all items in the Government's possession other than the $13,000 and the Government does not appeal that decision; the only property in question in this appeal, then, is the $13,000.

Daniels' office; the record is unenlightening) signed for the letter.

Following departmental regulations and the command of 19 U.S.C. § 1607, DEA also published a notice in the Wall Street Journal on May 7, 14, and 21. The DEA having heard nothing from Taylor, a declaration of forfeiture of the $13,000 was entered on July 10.

On August 22, Taylor was charged in a sealed, two-count indictment. The first charge was related to the cocaine base and the second was a forfeiture count for the $13,000. Upon being informed in October that the money had already been administratively forfeited, the district court dismissed the second count.

Some five months later, on March 19, 2002, Taylor was charged in a superceding indictment on conspiracy, drug and firearm charges. He pled guilty in May to possession with intent to distribute more than 50 grams of cocaine base. Taylor was sentenced in November to a prison term of 360 months.

In April 2003, Taylor first filed a motion seeking the return of his seized property. After a flurry of responses and replies, the case appears to have sat dormant until August 2004, when the district court ordered Taylor's motion converted into a civil action, since the criminal case against him had been closed and there remained "issues of fact which require further development in this case." Another period of inactivity followed -- it appears

3

that Taylor was unaware he needed to serve process on the Government again -- before the Government replied to the civil case in September 2005. No new evidence was submitted. The district court ruled in January 2006, entering a one-page order holding that Taylor's personal possessions should be returned but that the part of his motion related to the $13,000 was denied. No reasons were assigned. After his motion for reconsideration was denied, Taylor filed this timely appeal.

## II

## A

The issue in this appeal is whether the district court erred in ruling that Taylor was given constitutionally adequate notice of the administrative forfeiture of the $13,000. Although Taylor filed his motion as part of his closed criminal case, "the district court properly construed it as a civil complaint and the denial of the motion as a grant of summary judgment." United States v. Robinson, 434 F.3d 357, 361 (5th Cir. 2005). We review the grant of a motion for summary judgment de novo. Id.

The Government may use the administrative forfeiture procedure when seized property has a value under $500,000 or is in the form of U.S. currency. 19 U.S.C. § 1607(a) (2006). The statute requires the Government to publish the notice for three successive weeks and also commands that "[w]ritten notice of the seizure together with information on the applicable procedures shall be

4

sent to each party who appears to have an interest in the seized article." Id.

After notice is given, a party has 20 days in which to file a claim. Robinson, 434 F.3d at 362. If a claim is filed, administrative forfeiture is cancelled and the matter is referred to the relevant U.S. Attorney to begin judicial forfeiture. Id. "If no claim is filed, the property is summarily forfeited to the Government." Id.

"Once an administrative forfeiture is complete, a district court may review only 'whether the forfeiture comported with constitutional due process guarantees.'" Id. (quoting Kadonsky v. United States, 216 F.3d 499, 506 (5th Cir. 2000)). To withstand scrutiny under the Due Process Clause, the Government's notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane, 339 U.S. at 314.

B

Taylor advances two arguments. The first is that the DEA notice fails to pass constitutional muster and the forfeiture should be voided as a matter of law. Alternatively, he contends that there are issues of material fact that are unresolved and that the district court should have held an evidentiary hearing to determine if notice was constitutionally adequate. As his arguments in support are identical, we address them together.

With regard to the notice mailed to 1228 King Henry Drive, Taylor states that he did not live at that address and, since DEA gave him a ride to his actual residence on Bienville Boulevard and searched it, they were well aware of his correct address. The residence at 1228 King Henry Drive, Taylor claims, is the home of his mother and sister. Concerning the return receipt DEA received from the post office, Taylor points to the fact that the signature of the recipient is illegible and no printed name appears. In addition, Taylor's mother and sister filed sworn affidavits with the district court in June 2003 stating that (1) they were the only residents at that address (other than the sister's minor son), (2) neither had signed the certified mail receipt and (3) neither was home on May 2. The Government has no explanation for this mailing other than the unsupported assertion that Taylor maintained two residences.

As for the forfeiture notice sent to Daniels, the Biloxi attorney, Taylor argues that he did not engage Daniels until October 16, 2001, nearly six months after the notice was mailed. Taylor does not offer a sworn affidavit of Daniels or anyone in his office to this effect. He does point out that he was not incarcerated and DEA knew that he was not. This is relevant, he says, because forfeiture notice to an attorney might make more sense if the party is in jail. The Government only says that DEA must have had some information that Taylor was represented by

6

Daniels in April of 2001 because Daniels represented Taylor once an indictment was filed.

As the Government correctly points out, actual notice to Taylor is not required. Dusenbery v. United States, 534 U.S. 161, 170 (2002). Although the Government is not required to undertake "heroic efforts," it must fulfill Mullane's command that the effort be "reasonably calculated" to provide notice. Id. Dusenbery concerned a prisoner to whom notice was sent (1) care of the prison in which he was incarcerated, (2) to the residence at which he was arrested, and (3) to an address in the town where his mother lived. Id. at 164. Although prisoner mail records were not maintained and it was unclear whether Dusenbery received actual notice, the Supreme Court held that the prison's procedures for receiving and processing inmate mail were adequate to meet the requirements of the Due Process Clause. Id. at 172-73. The court noted that there was no indication that the mail to the prison had been returned undelivered. See id.

We have also spoken on the adequacy of administrative forfeiture. In Barrera-Montenegro v. United States, the Government seized $240,678 in currency from Barrera's car on July 22, 1992. 74 F.3d 657, 658 (5th Cir. 1996). Barrera was never charged with a crime and his attorney twice (on August 6 and 24) contacted DEA to inquire about the money and status of the case. Id. He was told both times that no file had been created and he would be

7

informed if something happened.  Id.  The attorney provided DEA with his and Barrera's current addresses.  Yet on August 10, DEA had in fact commenced administrative forfeiture proceedings and mailed notice to the address listed on Barrera's driver's license, which was in New York, and the notice was returned unclaimed.  Id. We held that the DEA's misrepresentation to Barrera's attorney on August 24 was dispositive of the case and demonstrated that the Government had failed to comport with due process.  Id. at 661.  In reviewing the legal standard, we reiterated that "when the government has in its possession information which would enable it to effect actual notice on an interested party, it is unacceptable for DEA to ignore that information and rely on notification by publication."  Id. at 660.

Our most analogous case to the one at bar is Armendariz-Mata v. U.S. Dept. of Justice, Drug Enforcement Administration, 82 F.3d 679 (5th Cir. 1996).  There the Government sent forfeiture notice (1) by certified mail to the prison where Mata was incarcerated -- which was returned undelivered for unknown reasons -- and (2) to his house, where it was signed for by his sister.  Id. at 681.  DEA made no further effort to contact Mata other than to publish three notices in USA Today.  Id.  We concluded that "[g]iven the government's knowledge of Mata's whereabouts, the notice sent to Mata's home residence was not adequate."  Id. at 683.  The notice mailed to Mata in prison was also insufficient because DEA knew it had been returned undelivered.  Id.

8

Most recently, we considered a case in which the FBI first sent a forfeiture notice to the claimant's home address. Robinson, 434 F.3d at 359. The letter was returned marked "UNCLAIMED," which led the Government to search an address database and discover four additional addresses associated with Robinson, to which letters were then sent. Id. Each was returned undelivered. Id. at 360. Several months later, the FBI tried again, resending to one address and adding two new ones. All letters were again returned unclaimed. Id. The district court noted that at least three of the addresses were acknowledged to be valid by Robinson, id. at 361, and he could not explain why the letters to these addresses went unclaimed, id. at 367. Under these circumstances, we held that the Government could not be faulted for its efforts at direct notification through the mail and its efforts satisfied the Due Process clause. Id. at 367.

III

On the record before us, we conclude for several reasons that Taylor deserves an evidentiary hearing. First, DEA knew where Taylor lived; it had given him a ride there and then searched his apartment. This fact relates to Barrera-Montenegro, where the Government ignored correct information it had and sent notice to another address. 74 F.3d at 658. In that case, the Government at least used an address on the driver's license. Id. Here, the Government offers no explanation for sending the notice to an address different from Taylor's known address. Second, unlike in

9

Robinson, the Government sent notice to an address for which there is no evidence that it was ever his residence, i.e., 1228 King Henry Drive. See 434 F.3d at 361. Third, we have found that notice provided to a claimant's sister, at his correct residence, was insufficient to pass constitutional muster. Armendariz-Mata, 82 F.3d at 683. Here, Taylor offers an uncontested, sworn statement to show that notice was not received by a family member at her residence. Finally, as regards the notice sent to Daniels' office, an evidentiary hearing will develop facts on the date of his engagement by Taylor and what happened to the notice after it was received by that office.

In the final analysis, Taylor presents more than enough here to remand the case for an evidentiary hearing. The Government has not offered evidence to contradict Taylor's submissions on the notice mailed to the address on King Henry Drive or the notice mailed to Daniels. At the evidentiary hearing, the Government will have the burden, see Dusenbery, 534 U.S. at 161, to show that its notice was "reasonably calculated, under all the circumstances, to apprise" Taylor of the forfeiture, Mullane, 339 U.S. at 314.

IV

For the foregoing reasons, we REVERSE the judgment of the district court and REMAND for an evidentiary hearing, not inconsistent with this opinion.

REVERSED and REMANDED.

10