# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
March 29, 2011

Lyle W. Cayce
Clerk

No. 10-40448

JORGE GONZALEZ; CHUBASCO, INCORPORATED;
EL CORONEL, INCORPORATED;
EL GRANDE TRAWLERS, INCORPORATED;
GONZALEZ FISHERIES, INCORPORATED;
LEON TRAWLERS, INCORPORATED; OCHO HIJOS, INCORPORATED;
RIO PURIFICATION, INCORPORATED;
RIO SAN MARCOS, INCORPORATED; OJOS NEGROS, INCORPORATED,

Plaintiffs-Appellants,

versus

UNITED STATES DEPARTMENT OF COMMERCE
NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION,

Defendant-Appellee.

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 1:06-CV-105

No. 10-40448

Before SMITH, DeMOSS, and OWEN, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Jorge Gonzalez and nine of his corporations appeal four sanctions issued by the National Oceanic and Atmospheric Administration ("NOAA"). Finding no error, we affirm.

I.

Gonzalez is the sole owner, director, and shareholder of the nine corporations, each of which owns and operates a shrimp trawler in the Gulf of Mexico. In September 2002, the NOAA issued a notice of violation ("Notice #1412") to Rio Purification and fined it $14,000 for fishing without turtle-excluder and bycatch-reduction devices on its shrimping nets, in violation of regulations under the Endangered Species Act of 1973. *See* 50 C.F.R. § 223.206(d)(2)(i). The notice informed Gonzalez that he had thirty days to request an administrative hearing to contest the violation and fine. The notice was served in two ways. First, a copy was sent via registered mail on November 18, 2002, and was signed for by Raul Garcia, Gonzalez's bookkeeper. Second, an agency official delivered another copy to Gonzalez's place of business, where it was accepted by Garcia on Gonzalez's behalf.

Six months after service, Gonzalez had not paid the fine. The NOAA issued a Notice of Permit Sanctions/Notices of Intent to Deny Permits ("notice of permit sanctions"), announcing that it would deny any future applications from Rio Purification for federal fishing permits under the authority given to the NOAA by the Magnuson-Stevens Fishery Conservation and Management Act.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-40448

The notices announced that the other eight corporations also would have their future permit applications denied.

In October 2003, the NOAA issued a notice of violation ("Notice #30369") to Rio San Marcos for operating a trawler without a permit and fined it $30,000. The notice of violation again informed Gonzalez that he had thirty days to contest the notice. An NOAA agent personally delivered the notice to Gonzalez's place of business, where it was accepted by Garcia on behalf of Gonzalez. Gonzalez again failed to pay the fine, so the NOAA issued a notice of permit sanction against the nine corporations.

In February 2005, the Coast Guard boarded a trawler owned by Gonzalez Fisheries, whereupon the captain admitted that he was fishing in federal waters without a permit. In March 2005, the NOAA issued a notice of violation ("Notice #50027") to Gonzalez Fisheries and fined it $30,000. The notice again informed Gonzalez that he had thirty days to request an administrative hearing to challenge the violation and fine. The Coast Guard seized, from the trawler, 1,354 pounds of shrimp, which was sold and the profits seized (an amount totaling $5,912.65). This notice was sent by certified mail on April 1, 2005, and was signed for by Garcia. Gonzalez requested a hearing on May 2, 2005.

In March 2004, Texas game wardens boarded a trawler owned by Rio San Marcos. The captain showed the wardens a list of logbook coordinates indicating that the trawler had been fishing in federal waters without a permit. In June 2005, the NOAA issued a notice of violation ("Notice #43022") to Rio San Marcos and fined it $30,000. Gonzalez requested a hearing on the notice on June 29, 2005. His request included not just Notice #50027 and Notice #43022, but also Notice #1412 and Notice #30369.

An administrative law judge ("ALJ") ruled that Gonzalez's requests for a hearing on Notice #1412 and Notice #30369 were time-barred because Gonzalez did not file his request within thirty days of service of the notice. The ALJ also

No. 10-40448

ruled that Notice #50027 was proper: the corporation was liable for fishing and possessing shrimp without a permit, the $30,000 fine was reasonable, and Gonzalez had not proven that he lacked the ability to pay the fine. Finally, another ALJ ruled that Notice #43022 was also proper.

Again, the ALJ found that the corporation was liable for fishing without a permit, the $30,000 fine was reasonable, and Gonzalez had not proven that he lacked the ability to pay. Gonzalez sought discretionary review of the ALJ's rulings, but the NOAA administrator denied the request, finding that substantial evidence existed in the record to support the ALJ's decisions and that there had been no errors of law.

Gonzalez sued to challenge the ALJ's rulings. The district court upheld all four sanction decisions but ruled that the NOAA should have provided additional notice before enforcing the permit sanctions against other corporations owned by Gonzalez that had not themselves committed any violations. Gonzalez appeals all four sanction decisions, arguing that (1) the denial of an administrative hearing to Rio Purification and Rio San Marcos on Notice #1412 and Notice #30369, respectively, constitutes a violation of their constitutional rights; (2) the NOAA's decision to assess penalties against these corporations violates the separation of powers doctrine; (3) the penalties violated the corporations' due process rights; (4) the penalties violated the corporations' right under the Eighth Amendment to be free of excessive fines; and (5) the seizure of shrimp by the NOAA violates the separation of powers doctrine.

II.

Gonzalez contends that the NOAA violated the Constitution by penalizing Rio Purification and Rio San Marcos without affording them a hearing. This is incorrect—both corporations were provided with an opportunity to request a hearing but failed to do so within the applicable time limits.

4

No. 10-40448

Gonzalez argues first that the NOAA did not properly serve the two notices of violations, because Raul Garcia was not the registered agent for service of process for either corporation and thus did not have the authority to receive the notices. Gonzalez bases his argument principally on 15 C.F.R. § 904.3(c), which states that service may be made "on the agent for service of process, on the attorney for the person to be served, or other representative." Even assuming, *arguendo,* that Garcia does not count as an "other representative" under that regulation, Gonzalez's argument still fails. That regulation governs service by personal delivery, not certified mail––which was how these notices were first served to both corporations.

Under existing regulations governing service of process, the NOAA may serve a notice of violation by certified mail to the violator's last known address, regardless of who signs for receipt. 15 C.F.R. § 904.3(a); *see also United States v. Robinson*, 434 F.3d 357, 366 (stating that "[d]ue process does not require actual notice or actual receipt of notice"). Gonzalez does not dispute that the mailings were addressed properly. Thus, the notices were properly served.

Gonzalez next claims that the corporations' right to a hearing has not yet lapsed, because the NOAA has not taken a "final action" to trigger a hearing request, given that the NOAA continues to take additional actions against the corporations. This argument is patently incorrect given the plain language of 15 C.F.R. § 904.104(a): "If no request for hearing is timely filed . . . the [notice of violation] becomes effective as the final administrative decision and order of NOAA 30 days after service of the [notice of violation] or on the last day of any delay period granted." Subsequent actions by the administrative agency do not render previous notices of violation non-final.

In sum, the district court properly dismissed Gonzalez's claims concerning Notice #1412 and Notice #30369. The companies were provided an opportunity to request a hearing and failed to do so—their failure to take advantage of that

5

No. 10-40448

opportunity does not give rise to a constitutional deprivation of process.

## III.

Gonzalez contends that allowing the NOAA to determine the adequacy of evidence to support his inability-to-pay-a-fine claim is a violation of the separation of powers principle, because it vests too much authority in the executive branch. Specifically, he claims that such decisions should be left to the discretion of the judicial branch.

The ability of an entity that has violated the Magnuson-Stevens Act to pay the civil penalty is one factor the NOAA may consider when it determines the amount of the penalty, as long as the violator properly provides information regarding ability to pay. 16 U.S.C. § 1858(a). That statute previously stated that the agency "shall" take into account the ability to pay, but it has since been amended to specifically state that an agency "may" consider ability to pay—it is not required to do so.

The federal regulations that implement the Magnuson-Stevens Act state that the violator has the burden of proving an inability to pay the civil penalty by providing verifiable, complete, and accurate financial information to NOAA. 15 C.F.R. § 904.108(c). Furthermore, the "NOAA will not consider a respondent's inability to pay unless the respondent, upon request, submits such financial information as Agency counsel determines is adequate to evaluate the respondent's financial condition." *Id.* Relevant financial information is defined to include, but is not limited to, "the value of respondent's cash and liquid assets, ability to borrow, net worth, liabilities, income, prior and anticipated profits, expected cash flow, and the respondent's ability to pay in installments over time." 15 C.F.R. § 904.108(d).

Gonzalez submitted several tax returns as proof of his inability to pay. The NOAA then requested additional financial information, which Gonzalez never

No. 10-40448

submitted. The ALJ granted the NOAA's motion to compel production of the requested financial information or to exclude the tax returns from consideration. Gonzalez still failed to submit any documents, so the ALJ ruled that the tax documents were excluded from consideration, that Gonzalez had failed to prove his inability to pay the civil penalty, and that the agency properly failed to consider his inability to pay the civil penalty.

Gonzalez does not challenge the propriety of the NOAA's request for these financial documents; rather, he argues that allowing an agency to determine his ability to pay a fine—a common agency function—violates the principle of separation of powers. He cites no law for such a conclusion, but relies solely on a rhetorical argument that it is incredible that the NOAA can determine what constitutes adequate financial information to prove inability to pay a fine. That is, however, the statutory scheme Congress has devised. The agency is not required to consider ability to pay; Congress has merely provided the NOAA the freedom to consider ability to pay as a factor in assessing civil penalties. Any regulations promulgated by the agency to assist it in determining whether an individual has the ability to pay a fine, so long as they are not arbitrary and capricious, cannot violate such a permissive statutory command.

It is possible that Gonzalez has inartfully briefed an argument that the regulations concerning the agency's consideration of his inability-to-pay claim are arbitrary and capricious. Even assuming that such an argument is not waived, it still fails. It is plainly not arbitrary and capricious for an agency to have the ability to request additional, relevant financial documents from an individual claiming financial hardship and to then deny the individual's claim when he fails to submit those documents.

IV.

Gonzalez contends that the penalty assessments deprived the corporations

7

of their due process rights.  Specifically, he raises three things that he says violate the Fifth Amendment: (1) the refusal to consider his inability-to-pay claim, which we have addressed; (2) the failure to provide "an objective forum where they would been given an opportunity to be heard"; and (3) the arbitrary and capricious assessment of penalties.

Gonzalez claims he was not provided an objective forum, because the ALJ did not allow him fully to develop his argument that the agency's actions were unconstitutional.  He is correct that the ALJ did not allow him to develop those arguments, but that is only because the ALJ did not have the authority to hear them. The NOAA's administrative appeals process explicitly states that the ALJ "has no authority to rule on constitutional issues."  15 C.F.R. § 904.200(b).  Rather, those claims are to be pursued in federal court, which Gonzalez has done.

Gonzalez also states that the NOAA engaged in "arbitrary and capricious punitive actions," but he does not expand on exactly how the ALJ's ruling was arbitrary and capricious—or even erroneous.  First of all, he does not dispute any of the facts that led the ALJ to conclude that the corporations had violated the Magnuson-Stevens Act. With liability firmly established, the only issue Gonzalez can dispute is the sanctions.  But even then, he provides no evidence to show that the sanctions were arbitrary and capricious, beyond vague allusions to his being treated harshly by the agency.

In the end, the record reveals substantial evidence that Gonzalez's corporations committed the violations for which they were penalized, that the penalties assessed were not remotely arbitrary or capricious, and that Gonzalez was provided a full and fair administrative hearing.  Gonzalez has not raised any specific issues on appeal that would cast doubt on any of those conclusions.

## V.

Gonzalez avers that the fines imposed on his corporations constitute "ex-

No. 10-40448

cessive fines" in violation of the Eighth Amendment. All of the fines, however, are below the statutory limits for this conduct, and "[n]o matter how excessive (in lay terms) an administrative fine may appear, if the fine does not exceed the limits prescribed by the statute authorizing it, the fine does not violate the Eighth Amendment." *Newell Recycling Co. v. E.P.A.*, 231 F.3d 204, 2010 (5th Cir. 2000).

Within his Eighth Amendment argument, Gonzalez blandly adds that "the actions taken by NOAA constituted Double Jeopardy violations protected under the Fifth Amendment of the U.S. Constitution." He does not expand on this line of thought, nor can we imagine how anything involved in this case could even remotely implicate double jeopardy.

## VI.

Gonzalez argues that the seizure of shrimp by the NOAA violates the separation of powers doctrine because it was done in the absence of judicial review. He also contends that the Magnuson-Stevens Act is unconstitutional because it allows the executive branch to seize property without judicial review.

There is, in fact, the possibility of judicial review. The Act explicitly provides for jurisdiction in the federal courts for any civil forfeiture actions. 16 U.S.C. § 1860(b); *see also* 18 U.S.C. § 983(a). Once these judicial proceedings are final, Gonzalez is free to make a claim for the seized property.

AFFIRMED.