United States Court of Appeals,

Fifth Circuit.

No. 95-50071.

Alphonso BARRERA-MONTENEGRO, Plaintiff-Appellant,

v.

USA and Drug Enforcement Administration, Defendants-Appellees.

Feb. 9, 1996.

Appeal from the United States District Court for the Western District of Texas.

Before REAVLEY, HIGGINBOTHAM and BARKSDALE, Circuit Judges.

REAVLEY, Circuit Judge:

This appeal arises from an administrative forfeiture by the United States Drug Enforcement Agency ("DEA") under authority of 21 U.S.C. § 881(a)(6)[1]. The question presented is whether the Plaintiff-Appellant, Alphonso Barrera-Montenegro (henceforth Barrera) received sufficient notice of the government's intent to forfeit money seized during a temporary detention. Because we hold he did not, we reverse the district court's order dismissing his complaint.

I. Facts

On July 22, 1992, at a United States Border Patrol checkpoint

---

[1]21 U.S.C. § 881(a)(6) provides in part:

>    (a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

>    (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter....

1

at Sierra Blanca, Texas, a search of the bags and a coat found hanging on the front passenger seat inside Barrera's car revealed the presence of $240,678.00 in United States currency. Agents seized the money with the exception of $1,000 in "traveling expenses" which was returned to Barrera along with a receipt for the balance. Agents then informed Barrera of the procedures necessary for recovery of his money. No drugs or other contraband were found and Barrera has never been charged with any criminal offense in connection with the seizure.

Shortly after the seizure, on August 6, 1992, and again on August 24, Barrera's attorney, Ronald Kuba, contacted DEA's Houston/El Paso office regarding the status of the case and the return of the money. He spoke with Special Agents Jerry Wells and Pamela Borquez, who seized the money, and Efrain DeJesus. The agents told him that no file had been created and no charges had been filed against Barrera, but they said Kuba would be contacted if and when something happened. Although Kuba advised DEA of Barrera's correct address and that of his own, Kuba was never contacted by DEA.

On August 10, 1992, only four days after this initial contact with Kuba, DEA commenced forfeiture proceedings by mailing a notice of seizure to Barrera's New York address as listed on his driver's license. The notice was returned unclaimed. On August 19, 1992, DEA began a three-week publication of the notice in USA TODAY, as required by 19 U.S.C. § 1607(a). Three months later, on November 9, 1992, Kuba filed a Petition for Remission with DEA, which he

2

resubmitted in February 1993 because DEA claimed it was never received.[2]  On December 4, 1992, DEA issued a declaration of forfeiture without actual notice to either Barrera or Kuba.

On August 16, 1993, DEA denied Barrera's Petition for Remission.  He then filed a motion for reconsideration on September 3, 1993.  Then, on July 22, 1994, since no action had been taken on his motion, Barrera commenced this action alleging jurisdiction under 21 U.S.C. §§ 877 and 881, and 28 U.S.C. §§ 1331 and 1335.  In his complaint Barrera alleged:  he was entitled to recover the money because neither he nor it had ever been made the subject of any criminal or civil action;  DEA's decision denying his Petition for Remission was not supported by substantial evidence;  there was no basis for the seizure;  the seizure violated the Fourth Amendment;  and the seizure violated his right to due process.  On September 15, 1994, DEA rejected Barrera's Request for Reconsideration.  Kuba asserts in an unsworn declaration that he had no actual knowledge of the forfeiture until he had read the government's motion to dismiss the instant complaint for lack of subject matter jurisdiction filed October 3, 1994, almost two years after the money had been forfeited.[3]

---

[2]Although DEA claimed this Petition was not received, a photocopy of the "green card" receipt appears in the record as Government's Exhibit 9 to its Motion to Dismiss and shows the petition was received and signed for on November 9, 1992.

[3]Although it is clear DEA never sent actual notice of the forfeiture to either Barrera or Kuba, DEA's rejection of the petition for remission did refer to the forfeiture.  Thus, by the time Kuba had filed his motion for reconsideration on September 3, 1993, it is reasonable to assume he had by this time surmised that the money had been summarily forfeited, as his motion requested

The district court granted the government's motion to dismiss pursuant to Fed.R.Civ.Pro. 12(b)(1), reasoning it had no jurisdiction to review Barrera's claim because there was no factual or legal support for his argument that the DEA violated his due process rights by failing to give him actual notice of the forfeiture proceeding. The district court held that DEA gave notice reasonably calculated to notify Barrera that forfeiture proceedings were underway. Under the circumstances of Kuba's contacts, returned mail and publication, we disagree and will reverse with instructions to return this case to the point at which Barrera may be given proper notice of the government's intent to forfeit the money.

## II. Standard of Review

It is well settled in this circuit that "[t]he district court ... has the power to dismiss [pursuant to Rule 12(b)(1) ] on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Voluntary Purchasing Groups, Inc. v. Reilly,* 889 F.2d 1380, 1384 (5th Cir.1989) (quoting *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981)). In the instant case, the district court dismissed based upon the complaint

---

either "remission of all currency seized," or "mitigation of the forfeiture...." However, there is no indication that Kuba was so informed before August 16, 1993, the date DEA rejected his petition for remission, which was a year after the money was seized, and too late for Barrera to respond to the notice of forfeiture.

4

and the undisputed facts evidenced in the record, holding that no hearing was required to resolve any underlying factual issues. Therefore, our review is limited to determining whether the district court's application of the law is correct and, if the decision was based on undisputed facts, whether those facts are indeed undisputed. *Ynclan v. Department of the Air Force,* 943 F.2d 1388, 1390 (5th Cir.1991); *Williamson,* 645 F.2d at 413.

### III. Discussion

This court has jurisdiction to review the procedural safeguards of a summary forfeiture of property by the Attorney General. *Scarabin v. Drug Enforcement Admin.,* 919 F.2d 337, 338 (5th Cir.1990). Barrera contends the government should have notified Kuba of its intent to forfeit the money, and failure to do so denied him due process. 19 U.S.C. § 1607(a) requires DEA to publish notice of the seizure and intent to forfeit seized property

> for at least three successive weeks in such manner as the Secretary of the Treasury may direct. Written notice of seizure together with information on the applicable procedures shall be sent to each party who appears to have an interest in the seized article.

If the party files a claim and cost bond within twenty days from the date of the first publication, the agency must forward the matter to the United States Attorney for the district in which the seizure took place for commencement of a judicial forfeiture proceeding. 19 U.S.C. § 1608. If a party fails to respond within the prescribed time period, the property is summarily forfeited. 19 U.S.C. § 1609(a).

The government responds that the notice was proper because it

5

was sent to Barrera's last known address[4] and was published as required by § 1607(a). Barrera failed to file a claim or a bond for the institution of judicial forfeiture proceedings and instead sought remission, which is a matter of grace with DEA. According to DEA, since Barrera has elected his remedy, he may not now seek judicial scrutiny of the forfeiture. However, Barrera argues it is the lack of notice, resulting from errors by the government, which caused Barrera's failure to seek his judicial remedy.

Notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). The "claimant's right to compel the agency to proceed by judicial forfeiture is an important statutory check on the government's power to forfeit private property. Therefore, DEA's compliance with statutory and constitutional notice requirements are essential components of the statutory regime." *Glasgow v. United States Drug Enforcement Admin.,* 12 F.3d 795, 797 (8th Cir.1993).

Although DEA is under no obligation to employ extraordinary means to notify an interested party to a forfeiture proceeding,

---

[4]DEA sent the notice to 8783 Lefferts Boulevard, New York, N.Y. 11418, the address listed on Barrera's driver's license. Barrera asserts in his brief that this address was incorrect, and during oral arguments his counsel pointed out that the address is actually *87-83* Lefferts. Omission of the hyphen resulted in an error of about eighty blocks. However, there is no indication the government intentionally omitted the hyphen, nor does Kuba state in his unsworn declaration which address he gave DEA.

6

when the government has in its possession information which would enable it to effect actual notice on an interested party, it is unacceptable for DEA to ignore that information and rely on notification by publication. *Cf. Aero-Medical, Inc. v. United States,* 23 F.3d 328, 331 (10th Cir.1994) (notice was unreasonable when DEA knew address to which notice sent was invalid, and made no attempt to notify plaintiff's registered agent, whose identity was in its possession); *United States v. Woodall,* 12 F.3d 791, 794 (8th Cir.1993) (notice sent to incorrect address was unreasonable when DEA had actual knowledge of party's whereabouts); *Glasgow,* 12 F.3d at 798 (notice unreasonable when government failed to disclose when claimant should file claim, information critical to his right of judicial forfeiture). The government does not dispute the lack of actual notice to either Barrera or Kuba, nor does it dispute the fact that DEA was contacted on two occasions by Kuba regarding the seizure.

If we are to accept the facts as recited by Barrera, then it is clear that Barrera's retained counsel contacted DEA within two weeks after the seizure, provided DEA with his and Barrera's correct addresses, and made DEA aware that Barrera was interested in retrieving his money and was willing to contest any forfeiture. It is apparent that on August 24, 1992, when Kuba contacted DEA for the second time, DEA agents knew or should have known that forfeiture proceedings had been commenced against Barrera on August 10, 1992, the date the notice of seizure was mailed to the New York address, only four days after the initial contact with Kuba.

7

Barrera also had filed on November 9, 1992, his petition for remission, which was received by DEA before it had issued its declaration of forfeiture on December 4, 1992.

The critical fact, dispositive of the present case, is the misinformation given to Kuba on August 26, 1992 when he could have contested the forfeiture on Barrera's behalf. DEA untruthfully informed Kuba that no file had even been opened and then proceeded to complete the publication of the notice. Agency practices which "reflect an "attitude of concealment rather than enlightenment' do not meet the basic demands of due process." *Glasgow,* 12 F.3d at 799 (quoting *Menkarell v. Bureau of Narcotics,* 463 F.2d 88, 94 (3d Cir.1972)).

During oral argument counsel for the government stated he was relying primarily on *Madewell v. Downs,* 68 F.3d 1030 (8th Cir.1995) and *Sarit v. United States Drug Enforcement Admin.,* 987 F.2d 10 (1st Cir.), *cert. denied,* --- U.S. ----, 114 S.Ct. 241, 126 L.Ed.2d 195 (1993). In *Madewell* there was no reason for DEA to have known the address to which it had sent notice was ineffective. In *Sarit,* counsel was on notice that forfeiture was imminent, yet did not notify DEA his client's address had changed, or contact DEA to determine when the notice would be published. The First Circuit held the ineffective notice was a result of counsel's conduct, and not that of DEA. *Sarit,* 987 F.2d at 16. Both *Madewell* and *Sarit* are thus factually distinguishable from the instant case because here Kuba did nothing to deceive or manipulate DEA, but made a good faith effort to elicit information regarding the retrieval of his

8

client's money.  DEA knew Barrera had not received notice, and though it knew how to give notice, failed to do so.[5]

## IV. Conclusion

The facts of this case demonstrate either bureaucratic misfeasance or worse.  Barrera's money was seized and no charges were filed against him.  When his duly retained attorney attempted to probe the inner workings of DEA to discover what it was doing with his client's money, he was misinformed and manipulated by the system for almost two years.  Under all the circumstances, Barrera did not receive proper notice of the government's intent to forfeit his money.  We therefore hold the order of forfeiture void.  The case is remanded for renewed administrative proceedings unless a judicial proceeding is commenced pursuant to 19 U.S.C. § 1608.

REVERSED AND REMANDED.

*    *    *    *    *    *

---

[5]In tax cases the Internal Revenue Service usually satisfies the statutory requirement by sending the notice via certified or registered mail to the taxpayer's last known address.  However, if IRS fails to exercise reasonable diligence in ascertaining the taxpayer's proper address, the notice is defective. *See, e.g., Ward v. Commissioner of Internal Revenue,* 907 F.2d 517, 522 (5th Cir.1990) (notice defective when IRS failed to process taxpayer's new address furnished to it by him, and sent notice to old address); *Mulder v. Commissioner of Internal Revenue,* 855 F.2d 208, 212 (5th Cir.1988) (where notice sent to taxpayer's last known address was neither delivered nor claimed, IRS was required to take further action, such as contacting tax-preparer whose identity and address were in its possession); *Johnson v. Commissioner of Internal Revenue,* 611 F.2d 1015, 1020-1021 (5th Cir.1980) (notice sent to taxpayer's last known address defective where IRS had misplaced power of attorney filed with the commissioner by taxpayer directing that notice be sent to his attorneys at their address).