**MENTIS EL PASO, LLP, Plaintiff,**

**v.**

**HEALTH CARE SERVICE CORPORATION, an Illinois Mutual Legal Reserve Company, a division of which is Blue Cross and Blue Shield of Texas, Defendant.**

No. EP–14–CV–00196–FM.

United States District Court,
W.D. Texas,
El Paso Division.

Signed Sept. 12, 2014.

---

5. The USPS's judgment is calculated as follows: $248,000–$75,038.69 = $173,960.31.

Paul Matthew O'Neil, Attorney at Law, Austin, TX, for Plaintiff.

Adam P. Feinberg, Anthony F. Shelley, Miller & Chevalier Chartered, Washington, DC, Andrew Michael Gross, Foley and Lardner LLP, Chicago, IL, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

FRANK MONTALVO, District Judge.

On this day, the court considered Defendant Health Care Service Corporation's, an Illinois Mutual Legal Reserve Company, a division of which is Blue Cross and Blue Shield of Texas ("Defendant" or "HCSC"), "Defendant's Motion to Dismiss" ("Motion") [ECF No. 4], filed June 3, 2014; Plaintiff Mentis El Paso, L.L.P.'s ("Plaintiff" or "Mentis") "Plaintiff's Response in Opposition to Defendant's Motion to Dismiss" ("Response") [ECF No. 15], filed July 11, 2014; and "Defendant's Reply in Support of Motion to Dismiss" ("Reply") [ECF No. 16], filed July 18, 2014.

## I. BACKGROUND

### A. Procedural Posture

Mentis filed "Plaintiff's Original Petition" ("Complaint") in the District Court of El Paso County, Texas on April 28, 2014 in cause number 2014DCV1303.[1] HCSC removed it on May 27, 2014.[2] Mentis operates a post-acute care intensive neurological rehabilitation facility in El Paso, Texas.[3] HCSC owns Blue Cross Blue Shield of Texas ("BCBSTX"), which is a licensed insurance provider, issuer, and/or administrator of health care plans in Texas.[4]

This suit arises from medical services provided in 2013 and 2014 to two patients: Patient A and Patient B, pursuant to a preferred provider agreement entered into with HCSC.[5] Mentis seeks damages totaling $386,018.75 for Patient A and $386,078.00 for Patient B, in addition to attorney's fees.[6] Mentis alleges five causes of action against HCSC:[7] (1) violations of the Texas Insurance Code through deceptive and unfair trade practices; (2) breach of contract; (3) violations of the Texas Insurance Code; (4) negligence and negligent misrepresentation; and (5) fraud and fraud by non-disclosure.[8]

Mentis alleges HCSC contracted to pay Mentis for medical treatment and services at agreed-upon rates established in the preferred provider agreement.[9] Mentis

1. ECF No. 1–1.

2. Def.'s "Notice of Removal," ECF No. 1, filed May 27, 2014.

3. Pl.'s Compl. 1–2, ECF No. 1–1.

4. *Id.* at 2.

5. *Id.* at 2.

6. *Id.* at 14.

7. Although Mentis named and refers to BCBSTX as the defendant, the court will hereinafter refer to HCSC, the parent company of BCBSTX, as the proper defendant in this matter.

8. Pl.'s Compl. 6–13.

9. *Id.* at 3–4.

further alleges that HCSC represented to Mentis that Patients A and B had effective coverage for each admission and that benefits were available and adequate for the medical services to be provided, thereby preauthorizing all services for each admission.[10] According to Mentis, it provided these services to Patients A and B and submitted claims to HCSC as required by the agreement, but was not reimbursed by HCSC.[11]

With regard to Patient A, HCSC initially paid for some of the services provided, but remaining claims were either unpaid or completely denied altogether.[12] Mentis alleges that HCSC later recouped all of the prior payments made to Patient A, asserting that the authorized services were not medically necessary, and that the services were not covered by Patient A's plan.[13] As to Patient B, Mentis alleges HCSC either did not pay at all, or paid only a portion of the required rate, contending that Medicare is the primary provider, not HCSC, or that a Medicare denial is required in order to be reimbursed by HCSC.[14] Mentis, on the other hand, argues that HCSC is the primary and contracted provider, not Medicare.[15]

### B. Parties' Arguments
#### 1. HCSC's Motion

HCSC asserts that all of Mentis' claims are barred under the doctrine of sovereign immunity, because the patients whose care is at issue were enrolled in the Service Benefit Plan (the "Plan"), which is a health benefits plan for federal employees, retirees, and their dependents established by the Federal Employees Health Benefits Act of 1959 ("FEHBA").[16] HCSC argues that FEHBA provides a mandatory administrative remedy for benefits disputes that expressly preempts state law claims challenging determinations regarding benefits or the administration of the Plan.[17] Consequently, HCSC contends the only remedy available to Mentis is to comply with FEHBA's mandatory administrative review process and to appeal a final decision in federal court against the federal government, not HCSC.[18] HCSC maintains that any payments in the form of benefit claims, administrative costs, or judgment rendered in this case will be paid by the United States Department of the Treasury (the "Treasury").[19]

Furthermore, HCSC argues that Mentis' second and third causes of action for breach of contract and violations of the Texas Insurance Code and Texas Prompt Pay Act are preempted by the FEHBA.[20] Additionally, HCSC seeks to dismiss Mentis' first, fourth, and fifth causes of action, based on misrepresentation and fraud, as preempted by FEHBA and for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6).[21]

#### 2. Mentis' Response

Mentis concedes both patients who received treatment were covered under a

---

10. *Id.* at 4.

11. *Id.*

12. Pl.'s Compl. 4.

13. *Id.*

14. *Id.* at 4–5.

15. *Id.* at 5.

16. Codified at 5 U.S.C. §§ 8901–14; *see* Def.'s Mot. 1–2.

17. *Id.* at 2.

18. *Id.*

19. *Id.* at 1, 11–12.

20. *Id.* at 15–18.

21. *Id.* at 18–20.

federal employee health benefit plan.[22] Notwithstanding, Mentis analogizes its cause of action to state law claims covered by ERISA that were not found to be preempted.[23] Moreover, Mentis states it is not suing the Plan or bringing claims against it as an assignee of the Plan beneficiary.[24] Rather, Mentis is suing an in-network provider with which it has entered into a direct contract that does not involve the underlying Plan.[25] Mentis contests whether any payment will come from the Treasury without the benefit of discovery.[26] Moreover, Mentis argues that the FEHBA has created a remedial mechanism only for claims of covered individuals—an enrollee, retiree, or dependent—not for claims of providers.[27] Accordingly, Mentis contends that its claims against HCSC are wholly distinct from the Plan, as they are based on the preferred provider agreement and assert separate common law and statutory grounds.[28]

### 3. *HCSC's Reply*

HCSC reiterates that sovereign immunity bars Mentis' claims because any judgment resulting from this case would be paid by the Treasury, regardless of whether the contract was entered into directly by HCSC and Mentis.[29] HCSC further distinguishes cases promulgated by Mentis as indicating no preemption, because those did not require the court to interpret the Plan to determine whether the patients'

treatments were covered—as would be the case here—which is preempted by FEHBA.[30] Finally, HCSC repeats that Mentis has failed to state a claim for relief where its claims for damages are more than the amounts to which it would allegedly be entitled under the preferred provider agreement, without any justification.[31]

## II. *APPLICABLE LAW*

### A. *Standard for a Motions to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1)*

Federal Rule of Civil Procedure Rule 12(b)(1) ("Rule 12(b)(1)") allows a party to challenge a federal court's subject matter jurisdiction to preside over a case.[32] A district court may find lack of subject matter jurisdiction in one of three manners: (1) the complaint by itself; (2) the complaint complemented by undisputed facts evidenced in the record; and (3) the complaint complemented by undisputed facts and the court's determination of disputed facts.[33] The party asserting jurisdiction bears the burden of proof for a Rule 12(b)(1) motion to dismiss.[34] Moreover, when a party moves to dismiss based on Rule 12(b)(1) in addition to another Rule 12 defense, the court should first examine the Rule 12(b)(1) jurisdictional challenge before addressing any attack on the mer-

---

22. *See* Pl.'s Resp. 4.

23. *Id.* at 4–5.

24. *Id.* at 6.

25. W. at 6–7.

26. *Id.* at 11–12.

27. Pl.'s Resp. 15.

28. *Id.* at 15–16.

29. Def.'s Reply 1–5.

30. *Id.* at 6–7.

31. *Id.* at 10–11.

32. Fed.R.Civ.P. 12(b)(1).

33. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.2001) (citing *Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)).

34. *Id.*

its.[35]

■■■ "Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims."[36] In ruling on a Rule 12(b)(1) motion to dismiss, the court must take all allegations set forth in the complaint as true.[37] Only when it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle the plaintiff to relief, should the court grant a motion to dismiss based on lack of subject matter jurisdiction.[38]

### B. Overview of FEHBA
#### 1. Historical and Contractual Background of the Plan

FEHBA authorizes the Office of Personnel Management ("OPM") to contract and negotiate with private insurance carriers in offering healthcare plans to federal employees, and to regulate such plans.[39] In 1960, the OPM entered into a contract (the "Master Contract") with the Blue Cross Blue Shield Association ("BCBSA") to establish the Plan, a national fee-for-service healthcare plan, with terms to be renegotiated on an annual basis.[40] Neither the OPM nor BCBSA are parties in this case; however, BCBSA relies on local companies to underwrite the Plan and administer it for services provided among various localities.[41] HCSC is an independent licensee of the BCBSA and manages local carriers such as BCBSTX.[42]

The Master Contract between the OPM and BCBSA provides: "By enrolling or accepting services under this contract, enrollees and their eligible dependents are obligated to all terms, conditions, and provisions of this contract."[43] FEHBA advises that the OPM contracts with carriers "shall contain a detailed statement of benefits offered and shall include such maximums, limitations, exclusions, and other definitions of benefits as OPM considers necessary or desirable."[44] The "Statement of Benefits" is provided to each enrollee in an appended brochure to the Master Contract, and delineates applicable benefits and conditions provided by carriers, such as HCSC.[45]

---

**35.** *Id.* (citing *Hitt v. City of Pasadena,* 561 F.2d 606, 608 (5th Cir.1977) (per curiam) (unpublished)).

**36.** *In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (Miss. Plaintiffs),* 668 F.3d 281, 286 (5th Cir.2012) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Stockman v. Fed. Election Comm'n,* 138 F.3d 144, 151 (5th Cir.1998)).

**37.** *Saraw Partnership v. United States,* 67 F.3d 567, 569 (5th Cir.1995) (citing *Garcia v. United States.,* 776 F.2d 116, 117 (5th Cir.1985)).

**38.** *Ramming,* 281 F.3d at 161 (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.,* 143 F.3d 1006, 1010 (5th Cir. 1998)).

**39.** *Empire Healthchoice Assurance, Inc. v. McVeigh,* 547 U.S. 677, 682–83, 126 S.Ct. 2121, 165 L.Ed.2d 131 (2006) (citing 5 U.S.C. § 8902(a)).

**40.** *Id.*

**41.** *See* 5 U.S.C. § 8903(1); "2013 Service Benefit Plan Master Contract," ECF No. 1–3.

**42.** *See Overview,* HCSC, http://www.hcsc.com/overview.html (last visited Aug. 26, 2014); *History,* HCSC, http://www.hcsc.com/history.html (last visited Aug. 26, 2014).

**43.** *Id.; see also* 2013 Master Contract, ECF No. 1–3, at 36.

**44.** *Id.* at 684, 126 S.Ct. 2121 (citing § 8902(d)) (internal quotation marks omitted).

**45.** *Empire Healthchoice,* 547 U.S. at 684, 126 S.Ct. 2121; *see also* 2013 Master Contract § 2.2(a), ECF No. 1–3, at 35; *see also* "2013 Statement of Benefits," ECF No. 1–4, at 4; "2014 Statement of Benefits," ECF No. 1–5, at 5.

Under FEHBA, each contract entered into by the OPM must "require the carrier to agree to pay for or provide a health service or supply in an individual case if the [OPM] finds that the employee ... is entitled thereto under the terms to the contract."[46] All claims by enrollees who believe they have been wrongfully denied benefits must resolve their claims through a mandatory administrative process by the OPM.[47] Entities acting on behalf of a covered individual that have obtained written consent, such as medical providers, are also entitled to utilize this administrative redress to dispute a claim.[48]

Health benefits claims must first be submitted to the carrier of the particular plan.[49] Once the carrier affirms its denial or fails to respond adequately, the enrollee or authorized medical provider may ask the OPM to review the claim.[50] If the OPM determines the carrier incorrectly denied a claim, the carrier is contractually obligated to pay the benefits.[51] Conversely, if the OPM upholds the denial of benefits, the covered individual or medical provider may file suit against the OPM. Thus, "[a] covered individual [or authorized medical provider] must exhaust both the carri-er and OPM review processes . . . *before* seeking judicial review of the denied claim."[52]

### 2. *Funding for the Plan*

Under FEHBA, the federal government pays approximately 75% of the premiums and the enrollee pays the remaining 25%.[53] Premiums are deposited in a special Treasury account, known as the Federal Employees Health Fund (the "Fund"), from which carriers withdraw to pay for covered healthcare benefits.[54] Carriers of experience-rated plans, such as the Plan, do not receive premiums directly, but instead draw from a letter of credit account in the Fund to pay for benefit claims and authorized administrative expenses.[55] Pursuant to the 2013 Master Contract, the OPM has the right to receive unused Plan premiums, and the carrier's profit, if any, originates from a separate, negotiated service charge between the carrier and the OPM.[56]

### III. *DISCUSSION*

 Absent an unequivocal waiver, sovereign immunity bars suits against the

---

**46.** 5 U.S.C. § 8902(j).

**47.** 5 C.F.R. § 890.105; *see also id.* § 890.107(d)(1).

**48.** 5 C.F.R. § 890.105(a)(2); *see also* 2013 Statement of Benefits, at 132; 2014 Statement of Benefits, at 131.

**49.** 5 C.F.R. § 890.105(a)(1).

**50.** *Id.*

**51.** *See* 5 U.S.C. § 8902(j).

**52.** 5 C.F.R. § 890.105(a)(1) (emphasis added).

**53.** *Empire Healthchoice*, 547 U.S. at 684, 126 S.Ct. 2121 (citing § 8906(b)).

**54.** *Id.* (citing § 8909(a)).

**55.** 48 C.F.R. §§ 1632.170(b)(1), 1652.216–71(b), 1652.232–71(d).

**56.** *See* 2013 Master Contract § 3.3, ECF No. 1–3, at 50; *Hous. Cmty. Hosp. v. Blue Cross & Blue Shield of Tex., Inc.*, 481 F.3d 265, 267 n. 2 (5th Cir.2007) (internal citation omitted) ("The government and the enrollees are responsible for the premiums and Blue Cross draws its funds directly from the Federal Employees Health Benefits Fund. The Fund is not the property of Blue Cross and any surplus is placed in the Plan's contingency reserves, which may be used only at OPM's discretion. Blue Cross is paid from a negotiated service charge."); 48 C.F.R. § 1615.404–4 (describing how the OPM and insurance carrier will set a service charge to compensate the carrier based on predetermined weighted guidelines).

federal government and its agents.[57] As sovereign immunity is jurisdictional in nature, the court must determine whether HCSC is entitled to sovereign immunity as an agent of the federal government, and if so, whether HCSC has waived its immunity.[58]

▆▆▆ The Fifth Circuit has not yet ruled on whether a FEHBA carrier is entitled to federal sovereign immunity.[59] However, the Fifth Circuit has enumerated a six-factor test to determine whether a private entity is entitled to *state* sovereign immunity, which provides guidance to an analysis of federal sovereign immunity:

1. Whether the state statutes and case law view the agency as an arm of the state;

2. The source of the entity's funding;

3. The entity's degree of local autonomy;

4. Whether the entity is concerned primarily with local as opposed to state-wide problems;

5. Whether the entity has the authority to sue and be sued in its own name;

6. Whether the entity has the right to hold and use property.[60]

The "weightiest factor" is the source of the entity's funding, because the Eleventh Amendment shields the state from suit where it is the real, substantial party in interest and damages must be paid from public funds.[61] Indeed, "[t]he general rule is that a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." [62] Moreover, sovereign immunity extends to federal contractors that administer government insurance, such as Medicare [63] and the Civilian Health and

**57.** *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 261, 119 S.Ct. 687, 142 L.Ed.2d 718 (1999) (citing *Lane v. Pena*, 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996)).

**58.** *See F.D.I.C. v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) (citing *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); *United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983)).

**59.** *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, No. 3:12–CV–1607–O, 2014 WL 360291, at *4, 2014 U.S. Dist. LEXIS 12750, at *15 (N.D.Tex. Feb. 3, 2014) (citing *Hous. Cmty. Hosp.*, 481 F.3d at 280 (declining to rule explicitly on the merits of BCBSTX's assertion of sovereign immunity as a private insurance carrier under FEHBA)); *but see Hous. Cmty. Hosp.*, 481 F.3d at 279 (quoting *Alaska v. United States*, 64 F.3d 1352, 1355 (9th Cir.1995)) (emphasizing that federal sovereign immunity is not a "right not to stand trial altogether," because Congress has waived sovereign immunity to the extent federal employee patients bring coverage disputes); *see also In re World Trade Ctr. Disaster Site Litig.*, 521 F.3d 169, 190 (2d

Cir.2008) (construing the Fifth Circuit in *Houston Community Hospital* to rule "that federal sovereign immunity did not encompass the right not to be sued.").

**60.** *See Innova*, 2014 WL 360291, at *5, 2014 U.S. Dist. LEXIS 12750, at *18–19 (citing *United States ex rel. Barron v. Deloitte & Touche, L.L.P.*, 381 F.3d 438, 440 (5th Cir. 2004) (internal citation omitted)).

**61.** *Barron*, 381 F.3d at 440 (internal citations omitted).

**62.** *Dugan v. Rank*, 372 U.S. 609, 620, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963) (internal quotation marks and citations omitted).

**63.** *See Matranga v. Travelers Ins. Co.*, 563 F.2d 677, 677 (5th Cir.1977) (citing *Peterson v. Weinberger*, 508 F.2d 45, 51–52 (5th Cir. 1975); *Peterson v. Blue Cross/Blue Shield of Texas*, 508 F.2d 55 (5th Cir.1975); 42 U.S.C. § 1395u) (affirming that Medicare fiscal intermediaries like Travelers are protected by sovereign immunity, because "[t]he Medicare Act authorizes the Secretary of Health, Education, and Welfare to provide for the admin-

Medical Program of the Uniformed Services ("CHAMPUS").[64]

HCSC urges the court to rely on *Innova Hospital San Antonio, L.P. v. Blue Cross & Blue Shield of Georgia, Inc.*,[65] in which the Northern District of Texas employed the Fifth Circuit's six-factor state test for a FEHBA carrier's claim of federal sovereign immunity. In that case, the Honorable Reed O'Connor determined that federal sovereign immunity extends to healthcare carriers, such as HCSC, that contract with the OPM.[66] Judge O'Connor emphasized that the only other court to analyze a FEHBA carrier's claim of federal sovereign immunity, also applied the Second Circuit's test for claims of state sovereign immunity.[67] This court will adopt *Innova's* analysis in determining whether HCSC is entitled to federal sovereign immunity.

### A. Whether HCSC is Entitled to Sovereign Immunity

Mentis argues it "is often not even aware whether the patient is employed by

a governmental entity o[r] a private employer," and is "suing BCBS under the managed care contract it entered with BCBS and under Texas Statute."[68] Mentis seeks to distinguish itself from the hospital in *Innova* by asserting that the hospital in that case was not directly contracted with BCBSTX and sued for breach of the terms of the FEHBA plan, not for a breach of a preferred provider agreement.[69] Mentis further contends that discovery is necessary to determine whether Patients A and B were enrolled in the Plan.[70] These arguments are unavailing, as Mentis has not offered evidence to contradict the affidavit by Adam Winebarger, Manager of Member Services at the BCBSA, Federal Employee Program, which verifies that both patients were enrolled in the Plan in 2013 and 2014.[71] Moreover, the Statement of Benefits provided to Patients A and B clearly state:

"[t]his brochure describes the benefits of the Blue Cross and Blue Shield Service Benefit Plan under our contract ... with the United States Office of Person-

istration of the Act through contract 'carriers.' ").

64. *See Holton v. Blue Cross & Blue Shield of S.C.*, 56 F.Supp.2d 1347, 1352–53 (M.D.Ala. 1999) (citing *Vanderberg v. Carter*, 523 F.Supp. 279, 285 (N.D.Ga.1981), *aff'd without op.*, 691 F.2d 510 (11th Cir.1982); *Livingston v. Blue Cross & Blue Shield of Ala.*, 788 F.Supp. 545, 548 (S.D.Ala.1992), *aff'd without op.*, 996 F.2d 314 (11th Cir.1993); *Rochester Methodist Hosp. v. Travelers Ins. Co.*, 728 F.2d 1006, 1012 (8th Cir.1984) (explaining that "[f]iscal intermediaries are entitled to sovereign immunity ... 'to the extent that the government is exposed to financial risk.' ").

65. *Innova*, 2014 WL 360291, 2014 U.S. Dist. LEXIS 12750.

66. *See* Def.'s Mot. at 7; *but see Roth v. Kiewit Offshore Servs., Ltd.*, 625 F.Supp.2d 376, 388–89 (S.D.Tex.2008) (explaining that there are two methods used to determine whether a

private entity is entitled to sovereign immunity outside the realm of corporations created by federal statute: (1) the Supreme Court's test created in *Boyle v. United Techs. Corp.*, 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988); and the Fifth Circuit's state sovereign immunity test).

67. *See Innova*, 2014 WL 360291, at *4, 2014 U.S. Dist. LEXIS 12750, at *17 (citing *Calingo v. Meridian Resources Co., LLC*, No. 7:11–CV–628(VB), 2011 WL 3611319, at *12 (S.D.N.Y. Aug.16, 2011) (citing *McGinty v. New York*, 251 F.3d 84, 95–96 (2d Cir.2001))).

68. Pl.'s Resp. 7, 10–11.

69. *Id.* at 9.

70. *Id.* at 11–12.

71. *See* Def.'s Notice of Removal, Ex. B, "Declaration of Adam Winebarger," ECF No. 1–2, filed May 27, 2014.

nel Management, as authorized by the Federal Employee Health Benefits law. This Plan is underwritten by participating Blue Cross and Blue Shield Plans (Local Plans) that administer this Plan in their individual localities.[72]

It is clear that the Master Contract entered into by the OPM and HCSC governs this suit, which necessarily arises under FEHBA.[73] With regard to the first factor, the court finds FEHBA's regulations, which require judicial redress to be brought against the OPM rather than the carrier, to be persuasive authority that FEHBA carriers, like HCSC, are viewed as arms of the state.[74] Thus, the first factor weighs in favor of immunity for HCSC.

HCSC asserts the federal government is the real, substantial party in interest; therefore, the court will next examine the payment of damages, should judgment result from this case. Mentis avers that it lacks contractual privity with the federal government, and therefore, the federal treasury will not pay any resulting judgment.[75] As discussed above, the federal government pays a majority of the premiums deposited in the Fund from which FEHBA carriers withdraw to pay for medical services provided to Federal Employee Health Benefit Program enrollees. FEHBA carriers are entitled to withdraw benefit costs "consist[ing] of payments made and liabilities incurred for covered health care services" and administrative expenses comprising "all actual, allowable, allocable and reasonable expenses incurred in the adjudication of subscriber benefit claims or incurred in the Carrier's overall operation of the business."[76] Thus, "legal expenses incurred in the litigation of benefit payments," will be reimbursed to carriers, absent a specific statutory or regulatory provision prohibiting such disbursement.[77]

---

72. Def.'s Notice of Removal, Ex. D, "Blue Cross and Blue Shield Service Benefit Plan 2013," at 6, ECF No. 1–4, filed May 27, 2014; *Id.* "Blue Cross and Blue Shield Service Benefit Plan 2014," at 7, ECF No. 1–5, filed May 27, 2014.

73. *See generally,* Master Contract, ECF No. 1–3.

74. *See also Innova,* 2014 WL 360291, at *5 n. 6, 2014 U.S. Dist. LEXIS 12750, at *20 n. 6 (citing 5 U.S.C. § 8902(a), (j); *Barron,* 381 F.3d at 441); 5 C.F.R. § 890.107(c) (internal quotation marks omitted) ("While there is no case law identifying FEHBA carriers as arms of the state, FEHBA explicitly authorizes OPM to contract with qualified carriers.... FEHBA's regulations also state that any judicial action must be brought against OPM and not against the carrier."); *see also Hous. Cmty. Hosp.,* 481 F.3d at 271 (commenting that "Congress sought to set up a partnership between OPM and private carriers."); *Jacks v. Meridian Res. Co., LLC,* 701 F.3d at 1234 (concluding that "FEHBA program carriers contracting with the federal government to provide health care insurance for federal employees are not unrelated and wholly separate business entities merely doing business in a highly regulated arena, but rather conduct business under the delegation of the federal government.").

75. Pl.'s Resp. 8–9.

76. 5 U.S.C. § 8909(a)(2); 48 C.F.R. § 1652.216–71(b)(2)(i), (ii). The 2013 Master Contract between OPM and HCSC mirrors the statutory language by providing that "[b]enefit costs consist of payments made and liabilities incurred for covered health care services on behalf of FEHBP subscribers" and administrative costs in the form of "legal expenses incurred in the litigation of benefit payments." 2013 Master Contract, at 48, ECF No. 1–3; *see also Hous. Cmty. Hosp.,* 481 F.3d at 275 n. 47 (citing 48 C.F.R. § 1652.216–71(b)(2)(i)–(ii); 2002 CS 1039 § 3.2(b)(2)(i)(ii)) (listing permitted costs that the carrier may charge to the Fund).

77. *See also Empire Healthchoice,* 547 U.S. at 709, 126 S.Ct. 2121 (Breyer, S., dissenting) ("[A]lthough the nominal plaintiff ... is the carrier, the real party in interest is the United States. Any funds that the petitioner recovers [in an action seeking reimbursement of insur-

All of Mentis' causes of action against HCSC—claims for underpayments, non-payments, and mistaken recoupments of partial payments arising from erroneous confirmation of covered claims or repudiation of such verification—seek damages arising from the Master Contract. Not only does the Master Contract govern how and when Mentis is to be paid, but it sets forth detailed provisions that specify the process and eligibility for such liability.[78] Therefore, any damages resulting from a judgment in favor of Mentis will be paid from the Fund, as Patients A and B were enrolled in the Plan at the time they received health care services.[79] Accordingly, the second factor—the source of the entity's funding—weighs in favor of HCSC.

In addition, HCSC argues that the third and fourth factors weigh in favor of immunity, because the federal government exercises substantial oversight of carriers and

Congress intended that the Plan be nationwide in scope.[80] Mentis does not respond to these arguments, but the court finds them to be compelling. While local carriers like BCBSTX exercise significant autonomy from the federal government, medical coverage and rates are set according to the Master Plan, reflecting meaningful government oversight. Moreover, the only way to determine whether medical treatment and services provided to Patients A and B were covered is to interpret the Plan, which is not limited to a particular locality. Indeed, "Congress intended for there to be a national health benefits program to serve the public interest of attracting the best possible workforce."[81] It is also apparent that "[t]he policy underlying [FEHBA's preemption provision] is to ensure nationwide uniformity of the administration of FEHBA benefits."[82] Accordingly, the court ·finds that the third

---

ance benefits where enrollee had recovered damages for injuries in state-court tort action] it must pay directly to the United States, by depositing those funds in the FEHBA United States Treasury account managed by the federal agency. The carrier simply administers the reimbursement proceeding for the United States, just as it administers the rest of the agency/carrier contract.").

**78.** See 2013 Master Contract § 1.9(f)(3) (Recovery of Erroneous Payments); id. § 2.3 (Payment of Benefits and Provision of Services and Supplies); id. § 2.9 (Claims Processing); id. § 2.3(g) (as amended by § 4.1(i)(g)) (noting it is the carrier's responsibility to identify overpayments and to promptly and diligently recover erroneous payments); 2013 Statement of Benefits, at 25–27 (explaining the member's duty to request pre-certification for an admission or to get prior approval for services); accord 2014 Statement of Benefits, at 26–28; 2013 Statement of Benefits, at 15 (information regarding non-participating providers); accord 2014 Statement of Benefits, at 15–16; see also Jacks v. Meridian Res. Co., 701 F.3d at 1234 (commenting as an example, "pursuant 5 U.S.C. § 8909, the funds received by carriers through these sub-

rogation efforts where the insured receives payment from a third party, are required to be credited to the Employees Health Benefits Fund, held by the Treasury of the United States.").

**79.** See Pl.'s Resp. 8–9. The court is unable to ascertain how questions regarding "the underwriting process, [whether] BCBS purchases reinsurance or stop loss coverage or how catastrophic claims may be paid if premiums are exceed by the costs of medical care," are relevant to this instant case, as Mentis has failed to explain the relevancy of these issues when it asserts HCSC preauthorized the services for which it seeks to be reimbursed. See Pl.'s Resp. at 12.

**80.** Def.'s Mot. 11–12 (citing 5 U.S.C. § 8903(1)).

**81.** Hous. Cmty. Hosp., 481 F.3d at 271; see also 5 U.S.C. § 8903(1) (instructing the OPM to contract or approve "[o]ne Government-wide [service benefit] plan.").

**82.** Burkey v. Gov't Emps. Hosp. Ass'n, 983 F.2d 656, ·660 (5th Cir.1993) (collecting cases).

and fourth factors also weigh in favor of immunity.

As discussed above, FEHBA mandates that suits regarding coverage claims be commenced against the OPM, not the independent carrier.[83] In addition, FEHBA's contracting authority provision expressly delegates to the OPM the power to prescribe reasonable minimum standards for health benefits plans, and sets limitations for withdrawing approval of a plan or terminating a contract.[84] As such, the court finds that the fifth factor weighs heavily in favor of immunity for HCSC.

The court also agrees with HCSC that the sixth factor—the right to hold and use property—supports sovereign immunity. HCSC points out several provisions in the Master Contract that describe the relationship and property rights of the United States and carriers. For instance, Section 5.40 explains the United States will provide "Government-furnished property" to HCSC and its local contracting entities, but that the United States shall at all times retain title to such property, as well as to property acquired by the carrier used only in performance of the Master Con-

tract.[85] The Master Contract further stipulates that the United States shall have access at all reasonable times to inspect the property, and at the end of the contract, the carrier must return the property to the United States, or alternatively, credit the net proceeds of any sale to the United States.[86] Title vests in the United States because the carriers are reimbursed for contractual expenses from the Treasury.[87] As Mentis does not offer any evidence to undermine the United States' right to hold and use property as specified in the Master Contract, the court finds this factor weighs in favor of sovereign immunity.

In sum, the court finds the United States to be the real, substantial party in interest and that HCSC is entitled to sovereign immunity.[88]

### B. Whether HCSC Has Waived Immunity

 Mentis has not asserted that HCSC has waived its sovereign immunity, but even if it had, the facts are clear that no waiver has occurred. In order to constitute a waiver, the United States must

---

83. *See supra* n. 74; *see also Botsford v. Blue Cross & Blue Shield of Mont., Inc.,* 314 F.3d 390, 398 (9th Cir.2002) ("FEHBA allows beneficiaries to sue the only employer and plan administrator involved in FEHBA: the United States.").

84. *See* 5 U.S.C. § 8902(e).

85. 2013 Master Contract § 5.40(a), (c), (d).

86. 2013 Master Contract § 5.40(f), (I).

87. *See* 48 C.F.R. § 45.402(b).

88. Because Mentis' claims would undoubtedly interfere with the public administration of the Plan, the court finds this lends even greater support for a finding of sovereign immunity. *See Dugan,* 372 U.S. at 620, 83 S.Ct. 999 (internal citations and quotation marks omit-

ted) (discussed *supra*); 5 U.S.C. § 8902(e) (authorizing the OPM to "prescribe minimum standards for health benefit plans"); 48 C.F.R. § 1609.7001(a), (c)(2), (d) (instructing carriers they must abide by the OPM's acceptable standards of business practices, otherwise the OPM may withdraw its approval in the plan or order corrective action); *see also Kobleur v. Grp. Hospitalization & Med. Servs., Inc.,* 954 F.2d 705, 711 (11th Cir.1992) ("Congress gave OPM the authority to administer the federal benefits program, to prescribe regulations necessary to meet this end, and to bind carriers to OPM's interpretations of their plans. The delegation of such authority, combined with the absence of any language in the FEHBA precluding the possibility of an exhaustion requirement, convinces us of Congress' faith in OPM's ability to protect federal employees through its administration of the program.").

unequivocally express its consent to be sued.[89] "Moreover, a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign."[90] The Fifth Circuit clarified that "Congress has waived sovereign immunity in the FEHBA context as to coverage disputes brought by federal employee patients."[91] Based on FEHBA's implementing regulations and dicta in *Empire Healthchoice,* the court in *Innova* concluded that Congress sought a limited waiver of sovereign immunity solely for claims brought against the OPM to review final decisions.[92] The court finds this reasoning persuasive. Therefore, Mentis should have exhausted its internal administrative remedies, and only thereafter, sued the OPM for judicial relief.[93] Accordingly, all of Mentis' claims against HCSC are barred by sovereign immunity and this court lacks jurisdiction to consider the merits of such claims.[94]

## IV. CONCLUSION

After due consideration of the facts, parties' arguments, and applicable law, the court **GRANTS** "Defendant's Motion to Dismiss" [ECF No. 4] for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

Accordingly, all of Plaintiff Mentis El Paso, LLP's claims against Defendant Health Care Service Corporation, an Illinois Mutual Legal Reserve Company, a division of which is Blue Cross and Blue Shield of Texas, are **DISMISSED WITH PREJUDICE** for failure to exhaust administrative remedies and failure to sue the appropriate defendant, the Office of Personnel Management.

**SO ORDERED.**

---

**89.** *United States v. Bormes,* —— U.S. ——, 133 S.Ct. 12, 16, 184 L.Ed.2d 317 (2012) (citing *United States v. Nordic Village, Inc.,* 503 U.S. 30, 33–34, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992)).

**90.** *Lane v. Pena,* 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996) (internal citations omitted).

**91.** *Hous. Cmty. Hosp.,* 481 F.3d at 279.

**92.** *See Innova,* 2014 WL 360291, at *7–8, 2014 U.S. Dist. LEXIS 12750, at *26–28 (citing 5 C.F.R. § 890.107(c); *Empire Healthchoice,* 547 U.S. at 680, 686–87, 126 S.Ct. 2121).

**93.** *See* 5 C.F.R. § 890.107(c) ("A legal action to review final action by OPM involving such denial of health benefits must be brought against OPM and not against the carrier or carrier's subcontractors."); *see also Empire Healthchoice,* 547 U.S. at 686–87, 126 S.Ct. 2121 (explaining that while 5 C.F.R. § 890.107(c) "channels disputes over coverage or benefits into federal court by designating a United States agency (OPM) sole defendant, no law opens federal courts to carriers seeking reimbursement from beneficiaries or recovery from tortfeasors.").

**94.** As the court finds it lacks subject matter jurisdiction under Rule 12(b)(1), the court will not address whether some of Mentis' state law claims may be preempted or otherwise fail to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See* Def.'s Mot. 14–20; Pl.'s Resp. 12–20.