# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 4, 2022

Lyle W. Cayce
Clerk

No. 21-40321

Coral Beach, Independent Executrix of the Estate of
Joseph John "Joe" Murphy; Yoram Ben-Amram; Galtex
Development, L.L.C.,

*Plaintiffs—Appellants*,

*versus*

The City of Galveston, Texas,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:12-CV-167

Before Barksdale, Stewart, and Dennis, *Circuit Judges*.

Per Curiam:*

Plaintiffs-Appellants appeal the district court's dismissal of their federal takings claims for lack of subject matter jurisdiction. We AFFIRM.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-40321

## I.   Facts and Procedural History

The property at issue consists of two buildings (collectively, the "Property") located in the East End Historical District of the City of Galveston, Texas (the "City"), containing fourteen rental units in total. Yoram Ben-Amram d/b/a Galtex Development, L.L.C. purchased the Property in March 2007, subject to a mortgage held by Joe Murphy. Zoning standards in the Historical District prohibit multifamily dwellings, but the Property maintained a legally non-conforming or "grandfather" status as a multifamily dwelling because it pre-dated the existence of the Historical District and the zoning standards. To keep this grandfather status, zoning standards prohibited "a discontinuance of actual occupancy as a multiple-family use for any consecutive period of time of six (6) months or longer."[1] The Property had always complied with this occupancy requirement until it was damaged by Hurricane Ike in September 2008. In January 2009, the City condemned the Property as unfit for human habitation and directed the tenants to vacate the buildings. The City informed Ben-Amram of the improvements needed to bring the Property back up to compliance with the International Property Maintenance Code, which the City had adopted. In response to the condemnation, Ben-Amram contacted the City and advised officials that he had already hired a construction company, and he obtained the required permits and began renovations. In January 2010, city inspectors indicated that the condemnation would be lifted if Ben-Amram completed certain additional repairs and submitted an engineer's letter attesting to the Property's safety. Ben-Amram never produced an engineer's letter.

---

[1] Galveston, Tex., Zoning Standards § 29-111(a)(4) (1991). The 1991 Zoning Standards were replaced in 2015 by the Land Development Regulations of 2015 after this action was filed in state court in 2012.

No. 21-40321

In May 2010, after the Property had been vacant for nearly fourteen months, the City informed Ben-Amram that the Property had lost its grandfather status and that he would have to get a Specific Use Permit ("SUP") approved for the Property to operate as a multifamily dwelling again. Zoning standards permitted Ben-Amram to appeal the revocation of grandfather status to the Zoning Board of Adjustments,[2] but he did not appeal. Ben-Amram applied for the SUP in December 2010. At the February 2011 city council meeting where Ben-Amram's request for the SUP was heard, the city council denied the SUP. However, multiple city council members encouraged Ben-Amram to make the necessary repairs and apply again, and the mayor confirmed that nothing would prevent him from reapplying.[3] Ben-Amram did not reapply. Murphy foreclosed on the Property in October 2011.

In April 2012, Plaintiffs-Appellants filed suit against the City in state court claiming that the City took their property without just compensation in violation of the Texas and United States constitutions. In June 2012, the City removed this case to federal court. In August 2013, the federal court remanded the state takings claims to state court and stayed the federal claims pending exhaustion of Plaintiffs-Appellants' state court remedies. After Texas appellate courts ruled against Plaintiffs-Appellants,[4] thus resolving the

---

[2] *Id.* § 29-112(c) ("Appeals to the Board can be taken by any person aggrieved or by an officer, department or board of the municipality affected by any decision of the Building Official.") (now codified at Article 14 of the Unified Development Code).

[3] Galveston City Council Regular Meeting Excerpt at 78–85 (Feb. 10, 2011).

[4] *See City of Galveston v. Murphy*, 533 S.W.3d 355, 365 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (holding that trial court lacked subject matter jurisdiction over Plaintiffs' regulatory taking claims regarding the denial of the SUP); *Murphy v. City of Galveston*, 557 S.W.3d 235, 244–45 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (affirming trial court's order dismissing Plaintiffs' Texas takings claims regarding the loss

state takings claims, this case was reinstated on the federal docket in January 2020 for the district court to hear Plaintiffs-Appellants' claims under the United States Constitution, through 42 U.S.C. § 1983, for taking of property without just compensation. The City moved for summary judgment arguing that the district court lacked subject matter jurisdiction over the federal takings claims. The district court construed the summary judgment motion as a Rule 12(b)(1) motion and granted it on grounds that the claims were not ripe for judicial review because Plaintiffs-Appellants failed to establish that the City's decisions were final.

The issue on appeal is whether the district court erred by dismissing Plaintiffs-Appellants' regulatory takings claims for lack of subject matter jurisdiction.

## II.   STANDARD OF REVIEW

"Ripeness is a question of law that implicates this court's subject matter jurisdiction, which we review de novo." *Urb. Devs. LLC v. City of Jackson*, 468 F.3d 281, 292 (5th Cir. 2006). The district court construed the City's motion for summary judgment as a motion to dismiss under FED. R. CIV. P. 12(b)(1). A motion filed under Rule 12(b)(1) "allow[s] a party to challenge the subject matter jurisdiction of the district court to hear a case." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing FED. R. CIV. P. 12(b)(1)). The district court can dismiss for lack of subject matter jurisdiction based on any one of the following three bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* (citing *Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). The party asserting jurisdiction in

---

of grandfather protection because the Plaintiffs failed to exhaust their administrative remedies).

opposition to a Rule 12(b)(1) motion bears the burden of proof, thus the plaintiff usually bears the burden of proving that jurisdiction exists. *Id.* (citations omitted).

Courts distinguish between 12(b)(1) motions that base the lack of jurisdiction on the face of the complaint and 12(b)(1) motions that attack the existence of subject matter jurisdiction in fact. *See Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. 1981). The City attacks the existence of subject matter jurisdiction in fact. In a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* at 413.

## III.    Discussion

Plaintiffs-Appellants argue that the district court erred in holding that it lacked subject matter jurisdiction because Plaintiffs-Appellants' takings claims were not ripe. We disagree.

The Takings Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, prohibits the taking of private property for public use without just compensation. *Urb. Devs. LLC*, 468 F.3d at 292. The Supreme Court has held that "[w]hen a plaintiff alleges a regulatory taking in violation of the Fifth Amendment, a federal court should not consider the claim before the government has reached a 'final' decision." *Pakdel v. City & Cnty. of San Francisco*, 141 S. Ct. 2226, 2228 (2021). Under the finality requirement, "a plaintiff must show that 'there [is] no question . . . about how the "regulations at issue apply to the particular [property] in question."'" *Id.* at 2230 (quoting *Suitum v. Tahoe Reg'l Plan. Agency*, 520 U.S. 725, 739 (1997)). While a plaintiff is no longer required to exhaust state remedies in order to pursue "a takings claim when the government has reached a conclusive position," "a plaintiff 's failure to properly pursue administrative procedures may render a claim unripe *if* avenues still remain

for the government to clarify or change its decision." *Id.* at 2231; *see also Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2167 (2019) ("[T]he settled rule is that 'exhaustion of state remedies "is *not* a prerequisite to an action under [42 U.S.C.] § 1983."'").

Here, because two such avenues remained available, the district court properly concluded that Plaintiffs-Appellants' claims were not ripe for judicial review. First, when Ben-Amram was notified that the City had revoked the Property's grandfather status because the Property had been unoccupied for more than six months, he could have appealed the City's decision to the Board of Adjustments.[5] To the extent that Plaintiffs-Appellants contest the City's interpretation of "occupancy" under zoning standard § 29-111(a)(4), appealing to the Board of Adjustments offered a relevant form of review, but Plaintiffs-Appellants never filed an appeal with the Board. Second, nothing prevented Ben-Amram from reapplying for an SUP after the city council denied his first application, yet he failed to reapply.

This court has held that "whenever the property owner has ignored or abandoned some relevant form of review or relief, such that the takings decision cannot be said to be final, the takings claim should be dismissed as unripe." *Urb. Devs. LLC*, 468 F.3d at 293 (citing *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1041 (5th Cir. 1998)). In *Urban Developers LLC v. City of Jackson*, the plaintiff asserted a regulatory takings claim against the city alleging that the city deprived it of economic use of its land by applying a

---

[5] Plaintiffs-Appellants argue that an appeal to the Board of Adjustments would have been futile because the City could appeal the Board's ruling and has a track record of doing so. The futility exception excuses a property owner "from obtaining a final decision if pursuing an appeal to a zoning board of appeals . . . would be futile." *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 349 (2d Cir. 2005). Because Plaintiffs-Appellants' futility argument relied on speculation rather than a conclusive showing that further attempts to secure relief would have been fruitless, the district court held that the futility doctrine offered them no relief. We agree with the district court's resolution of this issue.

flood-zone ordinance that prevented rehabilitation and repairs to its apartments. *Id.* at 292. However, after the city rejected the plaintiff's building plans due to non-compliance with the ordinance, the plaintiffs did not apply for a flood-zone development permit, pursue mandamus against the city's community development officer, or undertake the appeal process set forth in the city's municipal code. *Id.* at 293. Thus, this court dismissed the plaintiff's regulatory takings claims as unripe because the plaintiff had not satisfied the finality requirement. *Id.* at 294.

Similarly, here, because Plaintiffs-Appellants ignored relevant forms of relief, we hold that they failed to satisfy the finality requirement, and the district court properly dismissed their federal takings claims as unripe.

## IV.    CONCLUSION

For the foregoing reasons, the district court's dismissal of Plaintiffs-Appellants' federal takings claims is AFFIRMED.